**GF GAMING CORPORATION, d/b/a Famous Bonanza Casino and Easy Street Casino, a Colorado corporation; Blue Spruce Investment Corporation, a Colorado corporation; Annie Oakley's Emporium, Inc., a Colorado corporation; Baby Doe Development, Inc., a Colorado corporation; Sheftel Charitable Remainder Unitrust, an entity domiciled in Colorado; and Sun Sports and Entertainment, Inc., f/k/a Galactic Gaming, Inc., a Nevada corporation, Plaintiffs–Appellants and Cross–Appellees,**

v.

**Kevin S. TAYLOR, individually; and Snell & Wilmer, L.L.P., an Arizona limited liability partnership, Defendants–Appellees and Cross–Appellants.**

**No. 08CA0475.**

Colorado Court of Appeals,
Div. IV.

Feb. 5, 2009.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2008.

Burg Simpson Eldredge Hersh & Jardine, P.C., David P. Hersh, Diane Vaksdal Smith, Sarah Van Arsdale Berry, Englewood, Colorado, for Plaintiffs–Appellants and Cross–Appellees GF Gaming Corporation, Blue Spruce Investment Corporation, Annie Oakley's Emporium, Inc., Baby Doe Development, Inc., and Sheftel Charitable Remainder Unitrust.

Arckey & Reha, L.L.C., John F. Reha, Littleton, Colorado; Sara Yelton, Attorney at Law, L.L.C., Sara E. Yelton, Littleton, Colorado, for Plaintiff–Appellant and Cross–Appellee Sun Sports and Entertainment, Inc.

Faegre & Benson, L.L.P., Robert L. Matthews, Patrick F. Carrigan, Boulder, Colorado, for Defendants–Appellees and Cross–Appellants.

Opinion by Judge WEBB.

In this legal malpractice action, plaintiffs, GF Gaming Corporation, Blue Spruce Investment Corporation, Annie Oakley's Emporium, Inc., Baby Doe Development, Inc., and Sheftel Charitable Remainder Unitrust ("GF

Gaming"), and Galactic Gaming, Inc. ("Galactic"), separately appeal the costs awarded in favor of defendants, Kevin S. Taylor and Snell and Wilmer, L.L.P. ("Taylor"). We affirm in part, reverse in part, and remand with instructions.

## I.  FACTS

The trial court held an evidentiary hearing on Taylor's bill of costs following entry of summary judgment, which was affirmed in *GF Gaming v. Taylor*, 2008 WL 5255906 (Colo.App. No. 07CA1858, Dec. 18, 2008) (not published pursuant to C.A.R. 35(f)) (*GF Gaming I*). Taylor's defense counsel and Larry Barton, one of Taylor's damages experts, testified regarding the reasonableness and necessity of the requested costs, which totaled $207,664.21 including expenses for three damages experts and two liability experts. GF Gaming and Galactic presented no evidence, but nevertheless asked the court to reduce the bill of costs by $74,436.20 of allegedly unreasonable expenses based on their cross-examination of Taylor's witness.

The trial court made specific findings regarding the reasonableness of each cost category and awarded Taylor the entire bill of costs less $5,000 to account for the return to Taylor of a retainer by one expert witness. With the agreement of the parties, $3,741.55 and $7,419.45 were apportioned to GF Gaming and Galactic respectively to reflect costs of defending against separately retained liability experts. The court apportioned the remaining costs between GF Gaming and Galactic equally.

On appeal, Galactic disputes the reasonableness of the costs awarded for computer-assisted research, document coding, photocopying, expert witnesses, and depositions in Texas. It also disputes the equal apportionment. GF Gaming disputes the reasonableness of costs for the three damages experts and the Texas depositions.

## II.  SCOPE OF REVIEW

■■■ An award of costs to the prevailing party is within the trial court's discretion and will not be overturned absent a clear abuse of that discretion. *Mullins v. Kessler*, 83 P.3d

1203, 1205–06 (Colo.App.2003). However, the costs awarded must be reasonable. § 13–16–122, C.R.S.2008. The losing party is entitled to have the trial court make findings sufficient to disclose the basis for its decision to award costs and to support the amount awarded. *Brody v. Hellman*, 167 P.3d 192, 206 (Colo.App.2007).

## III.  DISCUSSION

### A.  Sufficiency of Findings

■■■ GF Gaming's and Galactic's initial contention that the trial court improperly relied on counsel "to do their gatekeeping functions, to look at items of costs before they send it off to a client," rather than making its own independent assessment regarding the reasonableness of the expert fees is unpersuasive. Because GF Gaming and Galactic presented no evidence, the court could reasonably accept defense counsel's and Barton's testimony. Although the court may have overstated its reliance on counsel, these comments do not show abdication of judicial responsibility because the court later made specific findings on the reasonableness of total costs in each category.

### B.  Computerized Legal Research

■■■ To recover computerized legal research costs, a party must show that: 1) the client was billed for the research costs separately from attorney fees; 2) the research was necessary for trial preparation; and 3) the research costs are reasonable. *See Roget v. Grand Pontiac, Inc.*, 5 P.3d 341, 349 (Colo. App.1999).

Here, these requirements were met. Taylor presented invoices for computerized legal research totaling $12,910.98, all of which had been itemized separately from attorney fees. The trial court credited defense counsel's testimony that most of this research was conducted for the purpose of dispositive motions, and it found the expenses were "reasonably incurred."

### C.  Document Coding

■■■ Taylor requested $15,973.15 for expenses of having discovery documents coded by an outside document management firm,

which indexed documents by particular fields, such as date and recipient, allowing attorneys to retrieve a desired document by a computer search.

Galactic cites no Colorado authority, and our research reveals none, addressing document coding expenses as recoverable costs. Cases under the federal costs statute, 28 U.S.C. § 1920, decline to award costs for document coding and management expenses because they are not mentioned in the statute and they are more akin to duties performed by attorneys. *See Northbrook Excess and Surplus Ins. Co. v. Procter & Gamble Co.*, 924 F.2d 633, 643–44 (7th Cir. 1991) (reduction of time in reviewing documents insufficient justification for inclusion of expenses for document data base in cost award); *Windy City Innovations, LLC v. America Online, Inc.*, 2006 WL 2224057, *3 (N.D.Ill.2006) ("The computer document coding systems for which AOL is seeking costs 'perform [ ] the work an attorney, paralegal or law clerk would have to perform in its absence [and thus] expenses for such systems are more properly considered expenses incidental to an award of attorneys' fees, not costs of suit' that are recoverable in a bill of costs." (alterations in original)); *Green Const. Co. v. Kansas Power & Light Co.*, 153 F.R.D. 670, 678–79 (D.Kan.1994) (collecting cases).

■ The categories in section 13–16–122 are illustrative rather than exhaustive. *See Cherry Creek School Dist. No. 5 v. Voelker*, 859 P.2d 805, 813 (Colo.1993) (section 13–16–122 "describes its scope as '[i]tems *includable* as costs'" and the word "include" is a term of extension or enlargement) (alteration and emphasis in original); *compare* § 13–16–122(1), C.R.S.2008 ("Whenever any court of this state assesses costs pursuant to any provision of this article, such costs may *include* ...." (emphasis added)), *with* 28 U.S.C. § 1920 ("A judge or clerk of any court of the United States may tax as costs *the following* ...." (emphasis added)). In contrast, the scope of section 1920 is uncertain. *Compare Adsani v. Miller*, 139 F.3d 67, 75 (2d Cir.1998) (section 1920 is not exhaustive of class of costs that can be awarded), *with Brisco–Wade v. Carnahan*, 297 F.3d 781, 782 (8th Cir.2002) (section 1920 is exhaustive list of what costs may be assessed). Therefore, we decline to follow federal authority declining to award costs for document coding and management expenses.

■ As indicated, Colorado allows computerized legal research expenses to be awarded as costs. *See Roget*, 5 P.3d at 349. We discern little functional difference between such research expenses and those for document coding. The attorney must exercise professional judgment in deciding what cases to cite or which documents to use. Both computer applications only make the attorney more efficient in exercising that judgment. Further, indexing documents by entering data in particular fields is a mechanical process, not a "substantive legal task[ ]." *Morris v. Belfor USA Group, Inc.*, 201 P.3d 1253, 1263 (Colo.App.2008) (treating paralegal expenses as attorney fees rather than costs because an attorney would perform the duties in the absence of a paralegal).

■ Hence, we defer to the trial court's finding that the document coding expenses were "reasonably incurred in this particular case," which is consistent with the court's observations about the complexity of the case. Absent a specific prohibition, only a finding of "reasonable necess[ity] for the development of the case" is required to bring an expense within the trial court's discretion to award costs. *Cherry Creek School Dist. No. 5*, 859 P.2d at 813.

### D. Photocopies

■ A trial court may award any fees for exemplification and copies of papers necessarily obtained for use in the case. § 13–16–122(1)(f); *Perkins v. Flatiron Structures Co.*, 849 P.2d 832, 836 (Colo.App.1992).

Here, the trial court credited defense counsel's testimony and found that the requested external and internal photocopying expenses of $21,178.10 were reasonably incurred.

### E. Expert Witnesses

GF Gaming challenges the reasonableness and necessity of the fees for the three dam-

ages experts. Galactic challenges the reasonableness and necessity of the fees for all five defense experts. We reject those challenges.

■ Galactic failed to raise in the trial court the reasonableness and necessity of the fees for the two defense liability experts. Issues not presented to or raised at the trial court will not be considered on appeal. *Beauprez v. Avalos,* 42 P.3d 642, 649 (Colo. 2002). Thus, we limit our review to the reasonableness and necessity of the fees for the damage experts.

■ Awarding costs for expert witness fees is expressly provided for by sections 13–16–122(1)(e) and 13–33–102(4), and is addressed to the trial court's sound discretion. *See American Water Development, Inc. v. City of Alamosa,* 874 P.2d 352, 389 (Colo.1994).

Here, the trial court credited defense counsel's and Barton's unrebutted testimony and noted that the amount of expert witness fees involved was "not unusual for me to see in these kinds of cases . . . ." The court also stated that the case was "absolutely one of the more complicated[,] complex, [and] factually difficult cases that I have had to deal with," and that "[Taylor's] decision to hire three [damage] experts in this case to address completely different issues: one, economic development; one relating to casino operations; and one relating to forensic accounting in my view is not on its face unreasonable." The trial court determined in its written order that all costs set forth in Taylor's bill of costs, which included the fees for all defense experts, were necessary and reasonable.

Because these findings are supported by the record, we discern no abuse of discretion. *Cf. Ballow v. PHICO Ins. Co.,* 878 P.2d 672, 684 (Colo.1994) (upholding cost award for expert witness fees and photocopying where trial court expressly found that they were "not inflated due to waste or error, but are reasonable in light of the complexity of this case.").

### F. Texas Depositions

GF Gaming and Galactic next contend the expenses for subpoenaing and deposing persons in Texas ("Texas witnesses") were unreasonable and unnecessary. Galactic further argues that none of these expenses should have been apportioned to it because they related exclusively to GF Gaming, which allegedly sold interests in the outcome of the underlying litigation to the Texas witnesses. We agree in part.

■ Expenses incurred in taking discovery depositions may be awarded as costs where the deposition was reasonably necessary for the development of the case in light of facts known to counsel at the time they were taken. *Cherry Creek School Dist. No. 5,* 859 P.2d at 813.

■ Here, the trial court apportioned $5,552.07 in Texas deposition costs equally between GF Gaming and Galactic. But $734.75 involved subpoena fees and related expenses for depositions that never took place. The trial court stated "it is clear that those [Texas] witnesses were not going to speak to . . . the Defendants without their [sic] being some threat of a subpoena and/or deposition." But it did not explain why any Texas deposition cost could properly be taxed against Galactic, which never dealt with the Texas witnesses.

■ Although we agree that the Texas depositions which took place were reasonably necessary for Taylor to determine whether GF Gaming was a real party in interest or possessed standing, we fail to see how costs for cancelled depositions were needed for the development of Taylor's case. While *Cherry Creek* awarded costs for depositions that were reasonably necessary in light of facts known to counsel at the time, we decline. to extend it to costs for preparing to take depositions merely because, as in the circumstances of this case, the prospective deponents were otherwise uncooperative.

Nor do we see how any of the Texas deposition expenses could be awarded against Galactic, given Taylor's concerns over real party in interest and standing. *Cf. Hale v. Erickson,* 23 P.3d 1255, 1258 (Colo.App. 2001) (allocating costs jointly and severally

against various parties because "costs actually awarded were not clearly apportionable to one plaintiff or the other.").

Accordingly, we reverse the trial court's order and judgment as to the Texas deposition costs and remand for the court to assess $4,817.32 against GF Gaming for the Texas depositions that took place.

### G. Apportionment of Costs

 Finally, Galactic contends the trial court abused its discretion in allocating to it one-half of Taylor's costs not pertaining to a specific plaintiff, rather than allocating those costs equally among the six plaintiffs. We disagree.

The decision to allocate costs between parties or, instead, impose joint and several liability lies within the sound discretion of the trial court. *Hale*, 23 P.3d at 1258.

Here, in apportioning the cost award equally between GF Gaming and Galactic, the trial court reasoned that "under the specific facts of this case[,] to do ... joint and several separation [sic] is doing nothing more than what we used to be doing under nonparty statute and comparative negligence statutes," adding "the fact is that Galactic ... participated throughout this case." The court also stated that it was aware of Galactic's insolvency and how apportioning the costs jointly and severally would, in its view, effectively but unfairly require GF Gaming to pay the entire cost award.

These findings were not an abuse of discretion. As explained in *GF Gaming I*, Galactic retained separate counsel and filed its own legal malpractice action against Taylor, whereas the remaining plaintiffs pursued their legal malpractice claims collectively, if at all. Before the cases were consolidated, Taylor had to defend both actions. And thereafter, Galactic asserted a breach of contract claim that GF Gaming did not.

Hence, with the exception of the Texas deposition costs attributable solely to GF Gaming, we conclude that the trial court did not abuse its discretion in allocating the costs equally between GF Gaming and Galactic. *Cf. Cobai v. Young*, 679 P.2d 121, 124 (Colo. App.1984) (trial court did not err in assessing against both parties one-half of third party's costs where both parties' claims against third party were dismissed).

The judgment is affirmed in part, reversed in part, and remanded with instructions.

Judge FURMAN and Judge RICHMAN concur.