2012 COA 86

**Michael SCHUESSLER, Plaintiff–Appellee and Cross–Appellant,**

v.

**James WOLTER, M.D.; and Pinnacol Assurance, Defendants–Appellants and Cross–Appellees.**

Nos. 11CA0093, 11CA0125, 11CA0126.

Colorado Court of Appeals,
Div. II.

May 24, 2012.

---

Law Office of Michael Goodman, P.C., Michael Goodman, Englewood, Colorado; Bisset Law Firm, Jennifer E. Bisset, Englewood, Colorado, for Plaintiff–Appellee and Cross–Appellant.

Martin Conklin, P.C., John L. Conklin, Amy K. Cardone, Denver, Colorado; Pryor,

Johnson, Carney, Karr, Nixon, P.C., Elizabeth C. Moran, Greenwood Village, Colorado, for Defendant–Appellant and Cross–Appellee James Wolter, M.D.

Vaughan & DeMuro, David R. DeMuro, Shelby A. Felton, Jennifer C. Madsen, Denver, Colorado, for Defendant–Appellant and Cross–Appellee Pinnacol Assurance.

Opinion by Judge CASEBOLT.

¶ 1 In these malpractice and workers' compensation insurance bad faith cases, which were consolidated and tried together, defendants, James Wolter, M.D. (Wolter) and Pinnacol Assurance (Pinnacol), appeal the judgments entered on jury verdicts in favor of plaintiff, Michael Schuessler (Schuessler), who also cross-appeals certain trial court rulings. We reverse the judgment against Wolter and remand for a new trial as to him. We affirm the judgment against Pinnacol in part, reverse it in part, and remand for further proceedings.

## I. Facts

¶ 2 Schuessler, a property maintenance worker, was injured on the job while installing a swamp cooler. He filed a workers' compensation claim with R. Merrill, Inc. (Merrill), his putative employer. Pinnacol, which provided workers' compensation insurance coverage for Merrill, denied the claim, asserting that Schuessler's medical condition resulted from chronic degenerative changes and was not related to the accident, and that at the time of the accident, Schuessler was working for another company, not Merrill. Schuessler contested the denial, and an administrative law judge (ALJ) subsequently awarded workers' compensation benefits to him, determining that he had incurred an on-the-job injury while working for Merrill. Pinnacol thereafter paid the benefits due.

¶ 3 At the time of Schuessler's injury, he had medical insurance through Kaiser Foundation Health Care Plan of Colorado (Kaiser). Following his injury, he was initially seen by his primary care physician. Kaiser's neurosurgery department performed a magnetic resonating image (MRI) scan, which showed degenerative damage to his cervical spine.

¶ 4 Wolter, a neurosurgeon working for Kaiser, diagnosed degenerative disc changes at multiple levels and possible herniation of at least one disc. Wolter recommended steroid injections or surgical intervention. At Schuessler's request, Wolter performed anterior cervical diskectomy and fusion (ACDF) surgery. The surgery for that condition was successful, but following the operation, Schuessler experienced chronic hypersensitivity and numbness on his right side, which had not been present before the operation.

¶ 5 Schuessler commenced a medical malpractice action against Wolter, contending that Wolter negligently caused a contusion to his spinal cord during surgery by bumping or nicking it with a surgical tool. Schuessler also filed a common law bad faith breach of insurance contract action against Pinnacol, contending that it had wrongly denied him workers' compensation benefits. The cases were consolidated for trial and, following a nine-day trial, the jury awarded Schuessler $650,000 in economic damages and $325,000 in noneconomic damages against Wolter, and $50,000 in economic damages and $325,000 in noneconomic damages against Pinnacol.

¶ 6 Following a posttrial hearing, the trial court reduced the award against Wolter to $900,000 based on the limitations contained in the Health Care Availability Act, §§ 13–64–101 to –503, C.R.S.2011, awarded prejudgment interest, and entered judgment against Wolter. The court rejected Pinnacol's claim, also submitted posttrial, seeking a declaratory judgment that it had a statutory right of subrogation for any amounts awarded against Wolter for the benefits it had paid to Schuessler. The court concluded that Pinnacol had waived its right to assert a subrogation interest. This appeal followed.

## II. Wolter's Appeal

¶ 7 During trial, Schuessler contended, among other things, that the injury to his spinal cord would not have occurred absent Wolter's negligence. Wolter's theory of the case was that the complication Schuessler experienced is a known, inherent risk of ACDF surgery, which can and does occur

even when a surgeon exercises reasonable care.

¶ 8 There was no dispute at trial that the surgery resulted in an unsuccessful outcome; experts on both sides of the case so testified. However, the parties disagreed whether such an outcome could occur absent negligence, and the parties' experts differed on whether Wolter had employed reasonable care. Wolter tendered a jury instruction based on CJI–Civ. 4th 15:4, which stated, "As to Plaintiff's negligence claim, a physician does not guarantee or promise a successful outcome by simply treating or agreeing to treat a patient. An unsuccessful outcome does not, by itself, mean that a physician was negligent." The trial court rejected the instruction. Wolter contends that the court erred in doing so, and we agree.

## A. Standard of Review

¶ 9 Trial courts have a duty to correctly instruct juries on all matters of law. *Day v. Johnson,* 255 P.3d 1064, 1067 (Colo. 2011).

¶ 10 An appellate court reviews for abuse of discretion a trial court's decision not to give a particular jury instruction. A trial court necessarily abuses its discretion if it bases its ruling on an erroneous view of the law or a clearly erroneous assessment of the evidence. *Kendrick v. Pippin,* 252 P.3d 1052, 1061 (Colo.2011).

¶ 11 When giving jury instructions in a civil case, the trial court generally should use those instructions contained in the Colorado Jury Instructions (CJI) that apply to the evidence under the prevailing law. C.R.C.P. 51.1(1); *Fishman v. Kotts,* 179 P.3d 232, 235 (Colo.App.2007). However, a judgment will not be reversed for refusal to give requested instructions where there was not resulting substantial, prejudicial error. *Armentrout v. FMC Corp.,* 842 P.2d 175, 186 (Colo.1992). Prejudicial error exists when the record shows that a jury might have reached a different verdict if a proper instruction had been given. *See Williams v. Chrysler Ins. Co.,* 928 P.2d 1375, 1377 (Colo. App.1996).

## B. Law

¶ 12 A party is entitled to an instruction embodying his or her theory of the case if it is supported by competent evidence and is consistent with existing law. *Federal Ins. Co. v. Public Serv. Co.,* 194 Colo. 107, 112, 570 P.2d 239, 242 (1977). While a litigant is generally entitled to a theory of the case instruction, the trial court need not give the litigant's tendered instruction if the other instructions encompass the litigant's theory. *Krueger v. Ary,* 205 P.3d 1150, 1157 (Colo. 2009).

¶ 13 CJI–Civ. 15:4 is based on *McGraw v. Kerr,* 23 Colo.App. 163, 167–68, 128 P. 870, 872–73 (1912), later approved in *Brown v. Hughes,* 94 Colo. 295, 303–04, 30 P.2d 259, 262 (1934) (a physician does not undertake to warrant a cure and is not responsible for want of success unless it results from a failure to exercise ordinary care).

¶ 14 In *Day,* 255 P.3d at 1072, the supreme court held that a portion of that pattern instruction, not at issue here, accurately reflects Colorado medical malpractice law. The pattern instruction is based on a fundamental tenet of tort law, which is that the mere occurrence of an injury or accident, in and of itself, does not mean that the injury was the result of negligence. *Id.* at 1069 (a poor outcome does not, standing alone, constitute negligence); *Melville v. Southward,* 791 P.2d 383, 390 (Colo.1990) (mere presence of an infection following surgery does not establish prima facie case of negligence); *Schlesselman v. Gouge,* 163 Colo. 312, 321, 431 P.2d 35, 39 (1967) ("[W]e have repeatedly held that ... 'the fact that there was a lamentable result is not of itself evidence of negligence on the part of the defendants.'" (quoting *Brown,* 94 Colo. at 306, 30 P.2d at 263)); *Locke v. Van Wyke,* 91 Colo. 14, 21, 11 P.2d 563, 564 (1932) ("a bad result in itself is no evidence of negligence"); *Smith v. Curran,* 28 Colo.App. 358, 362, 472 P.2d 769, 771 (1970) (proof of a bad result is not of itself evidence of negligent treatment by a doctor). Essentially, the instruction is given to disabuse the jury of any notion that a bad result is by itself negligence and informs the jury that it cannot consider the bad outcome alone

in determining whether the applicable standard of care has been met.

### C. Application

¶ 15 Here, following the surgery, Wolter ordered an MRI based on Schuessler's post-surgery symptoms of pain, weakness, and hypersensitivity on his right side. The MRI showed a "focal area of cord signal abnormality" within the spinal cord at the level of two vertebrae near where Wolter had performed the ACDF procedure.

¶ 16 As previously noted, at trial, Schuessler argued that the surgical complication he sustained could not have occurred absent negligence, while Wolter's theory of the case was that such a complication is a known risk that can occur in ACDF surgery without negligence. The record indicates that the experts on both sides agreed that Schuessler's postoperative myelopathic pain syndrome was a bad outcome.

¶ 17 The trial court refused to provide the tendered instruction, concluding that it was inapplicable because the surgery successfully resolved the cervical disk problems that had led to Schuessler's surgery. We agree with Wolter that the court erred in rejecting the instruction.

¶ 18 The proffered instruction accurately states the law, see Day, 255 P.3d at 1069 ("a poor outcome does not, standing alone, constitute negligence"); the evidence provided by the expert witnesses for both sides indicated that this was a bad outcome; and Wolter's expert specifically said that the outcome could occur without negligence, triggering the need for the instruction. While we agree with the trial court that Schuessler's surgery, the ACDF repair, did not have an unsuccessful outcome, that conclusion does not affect whether Wolter exercised reasonable care and bumped or nicked Schuessler's spinal cord with a surgical tool during the surgery. See Day v. Johnson, 232 P.3d 175, 181 (Colo.App.2009) (plaintiff claimed that surgeon, who operated to remove a nodule and part of her thyroid, injured her larynx and left her unable to speak; "bad outcome" instruction with respect to unintended laryngeal injury was properly given), aff'd, 255 P.3d 1064; Smith, 28 Colo.App. at 362, 472

P.2d at 771 ("bad outcome" instruction proper when patient sustained a separate complication of an infection and osteomyelitis following successful surgery for fractured knee). .

¶ 19 Moreover, Schuessler's expert testified that the bad outcome would not have occurred without negligence, and Schuessler's counsel argued in closing, "[Y]ou're responsible for the harm you cause," and "I don't get commonsense wise how you can have an injury ... on your spinal cord without the doctor having caused it when he's operating right in that level with a tool," in essence asserting that the mere existence of a bad outcome warranted a finding of negligence. .

¶ 20 We reject Schuessler's contention that the failure to give the tendered instruction is not reversible error because Wolter's theory of the case was communicated to the jury in Instruction No. 1. That instruction stated, as relevant here: "Wolter denies he was negligent in performing the surgery and that he caused any damages to Plaintiff." Both this instruction and the other instructions given in this case were insufficient to adequately instruct the jury concerning the applicable law. Cf. Krueger, 205 P.3d at 1157 (trial court need not give litigant's tendered instructions if the other instructions encompass the litigant's theory). No other instruction informed the jury that Wolter could not be held liable merely because of a bad outcome. See Day, 255 P.3d at 1070 ("CJI–Civ. 15:4 is the only instance of the model instructions addressing the issue of alternative treatments or judgment in medical malpractice. Not recognizing the role of judgment in making a diagnosis or choosing between alternative treatment options would ignore an essential element of the practice of medicine." (footnote omitted)).

¶ 21 Schuessler also argues that because Wolter did not object to Instruction No. 1 as a misrepresentation of his theory of the case, he waived any objection. We reject this assertion.

¶ 22 While a party's theory of the case may be contained in a single instruction, a theory of the case may also require dis-

crete instructions on relevant, specific principles of law. *Gordon v. Benson*, 925 P.2d 775, 777–78 (Colo.1996) (trial court erred in refusing comparative negligence instruction reflecting defendant's theory of the case; fact that the defendant tendered an instruction different from his theory of the case instruction indicated that he did not waive his objection).

¶ 23 Moreover, as Schuessler notes, a theory of the case instruction should be general and brief. *See People v. Meads*, 58 P.3d 1137, 1138 (Colo.App.2002), *aff'd*, 78 P.3d 290 (Colo.2003). To have added the information contained in CJI–Civ. 15:4 to Instruction No. 1 would have been contrary to this directive. And the theory of the case instruction sets forth a party's *contentions*, whereas the instruction requested here would have set forth the applicable *law*.

¶ 24 Schuessler also argues that Wolter was permitted to place his theory of the case before the jury during closing argument and through the testimony of his expert witnesses. *See People v. Dore*, 997 P.2d 1214, 1222 (Colo.App.1999) (in determining whether the jury has been adequately informed of a party's theory of defense, the court may consider whether closing argument fairly represented defendant's theory to the jury). Again, however, this argument ignores the crucial point that nowhere in the instructions was the jury told that, in medical malpractice law, an unsuccessful outcome by itself is insufficient to impose liability.

¶ 25 Schuessler also argues that the notes on use to CJI–Civ. 15:4 indicate that giving the instruction is discretionary because it uses the word "may" ("This cautionary instruction may be given ... when the evidence of malpractice includes an unsuccessful outcome."), and that Wolter is seeking to eliminate that discretion. But discretion in determining the form and style of jury instructions, *see Day*, 255 P.3d at 1067, does not authorize a trial court to omit applicable instructions on the law when the evidence raises the issue and the instruction accurately reflects the law, as here. *See Gordon*, 925 P.2d at 777–78 (the duty to instruct the jury correctly on the applicable law "requires the trial court to instruct on a party's theory of

the case if it is supported by competent evidence").

¶ 26 We do not perceive that the tendered instruction here would have confused or misled the jury. Contrary to Schuessler's further contention, the tendered instruction would not have unfairly emphasized the defense theory or improperly judicially resolved a factual issue. Instead, it merely would have instructed that a bad surgical outcome, *without more*, does not mean that the physician was negligent. Stated differently, a plaintiff may not rely solely upon a bad outcome to prove liability, but must provide evidence that the physician failed to exercise reasonable care. *See Day*, 255 P.3d at 1069. Rejecting a tendered instruction that properly instructs the jury on the law, whose subject is not adequately covered elsewhere in the instructions, is error. *See McGraw*, 23 Colo.App. at 171, 128 P. at 874.

¶ 27 Schuessler asserts that any error in failing to give the tendered instruction was harmless, primarily because he presented significant proof of Wolter's negligence. We reject this assertion. On this record, the jury might have reached a different verdict if a proper instruction had been given, *see Williams*, 928 P.2d at 1377, because Wolter introduced expert testimony that he was not negligent.

¶ 28 We reject Schuessler's further contention that CJI–Civ. 15:4 simply creates a rebuttable presumption and that, accordingly, it was within the court's discretion to refuse to give it here because he presented rebutting evidence. Nothing in the language of the pattern instruction creates a presumption. *See Colby v. Progressive Cas. Ins. Co.*, 928 P.2d 1298, 1302 (Colo.1996) (reviewing language in statute at issue to determine if a rebuttable presumption was created); *Murray v. Montgomery Ward Life Ins. Co.*, 196 Colo. 225, 229, 584 P.2d 78, 81 (1978) ("The effect of a presumption is to create a prima facie case, upon which judgment may be rendered in the absence of contrary evidence."); *see also* CRE 301 (defining presumption); *Krueger*, 205 P.3d at 1154 ("A rebuttable presumption (1) shifts the burden

of going forward to the party against whom it is raised, and (2) if that burden is not met, establishes the presumed facts as a matter of law. However, if the burden is met, the presumption does not continue in the case. Nonetheless, a permissible inference of the presumed facts remains."); *Moreno v. People*, 775 P.2d 1184, 1188 (Colo.1989) (examining reasons courts create presumptions).

¶ 29 Instead, CJI–Civ. 15:4 simply informs the jury that evidence of an unsuccessful outcome cannot, by itself, be sufficient to prove that a physician was negligent.

¶ 30 We have considered, and reject, Schuessler's remaining contentions concerning this error. Accordingly, a new trial is required in which, assuming a similar evidentiary posture, the court should give the requested instruction.

¶ 31 In light of this conclusion, we need not address Wolter's additional contention that the trial court erred in allowing Schuessler's expert to give opinion testimony at trial beyond the scope of that contained in his report, because that contention will likely not arise on retrial. *See Gambrell v. Ravin*, 764 P.2d 362, 365 (Colo.App.1988) (declining to address issues unlikely to arise on retrial), *aff'd*, 788 P.2d 817 (Colo.1990). However, if it does arise again, the trial court may exercise its discretion in determining whether such testimony is admissible.

### III. Pinnacol's Appeal

#### A. Directed Verdict or Judgment Notwithstanding the Verdict

¶ 32 Pinnacol asserts the trial court erred in denying its motion for directed verdict or judgment notwithstanding the verdict (JNOV). It contends that, in a situation involving a first-party bad faith claim, as here, an insurer is entitled to judgment as a matter of law where it can show that it acted reasonably in denying a claim based on a defense that was fairly debatable. Essentially, Pinnacol contends that fair debatability is a complete defense to a bad faith claim, as a matter of law, so long as there is any evidence to support its denial decision. We disagree.

#### 1. Standard of Review

¶ 33 A motion for a directed verdict or JNOV should not be granted unless the evidence compels the conclusion that reasonable jurors could not disagree and that no evidence or inference therefrom has been received at trial upon which a verdict against the moving party could be sustained. The trial court must view the evidence in the light most favorable to the nonmoving party. We review a ruling on a motion for directed verdict de novo. *MDM Group Associates, Inc. v. CX Reinsurance Co.*, 165 P.3d 882, 885 (Colo.App.2007).

¶ 34 If there is no conflicting evidence with respect to a particular issue raised by the motion for a directed verdict and the only concern is the legal significance of undisputed facts, then an appellate court may make an independent determination of the issue. *Evans v. Webster*, 832 P.2d 951, 954 (Colo.App.1991). Where the issue raised on a motion for directed verdict is one of law, we review the trial court's ruling de novo. *Omedelena v. Denver Options, Inc.*, 60 P.3d 717, 722 (Colo.App.2002).

#### 2. Law

¶ 35 A workers' compensation insurer owes an employee of its insured a duty of good faith and fair dealing in handling claims by the employee for such benefits. *Travelers Ins. Co. v. Savio*, 706 P.2d 1258, 1270–74 (Colo.1985). A breach of that duty subjects the insurer to liability in tort. *Brodeur v. American Home Assurance Co.*, 169 P.3d 139, 146–47 (Colo.2007).

¶ 36 To prove the elements of a common law bad faith tort claim in the workers' compensation context, a claimant must prove that the insurer (1) acted unreasonably and (2) did so with knowledge of or reckless disregard for the fact that no reasonable basis existed for its action. *Id.* The reasonableness of the insurer's conduct must be determined objectively, based on proof of industry standards. *Bankruptcy Estate of Morris v. COPIC Ins. Co.*, 192 P.3d 519, 524 (Colo.App.2008).

¶ 37 Under Colorado law, it is reasonable for an insurer to challenge claims that are "fairly debatable." *Savio*, 706 P.2d at 1275 (quoting *Anderson v. Cont'l Ins. Co.*, 85 Wis.2d 675, 271 N.W.2d 368, 377 (1978)); *Zolman v. Pinnacol Assurance*, 261 P.3d 490, 496 (Colo.App.2011).

> Thus, an insurer will be found to have acted in bad faith only if it has intentionally denied, failed to process, or failed to pay a claim without a reasonable basis. Indeed, even if an insurer possesses a mistaken belief that a claim is not compensable, it may be within the scope of permissible challenge.

*Zolman*, 261 P.3d at 497 (citations omitted).

¶ 38 "What constitutes reasonableness under the circumstances is ordinarily a question of fact for the jury. However, in appropriate circumstances, as when there are no genuine issues of material fact, reasonableness may be decided as a matter of law." *Id.* Even so, the defense of fair debatability is not a threshold inquiry that is outcome determinative as a matter of law; it is not necessarily sufficient, standing alone, to defeat a bad faith claim. *Vaccaro v. American Family Ins. Group*, 2012 COA 9, ¶ 42, 275 P.3d 750; *Sanderson v. American Family Mut. Ins. Co.*, 251 P.3d 1213, 1217 (Colo. App.2010).

### 3. Application

¶ 39 Here, to the extent that Pinnacol contends that proof of fair debatability defeats Schuessler's bad faith claim as a matter of law, we reject that proposition. *See Vaccaro*, at ¶ 42; *Sanderson*, 251 P.3d at 1217. Pinnacol's reliance upon *Zolman* for a different result is misplaced. That case does not stand for the proposition that proof of fair debatability allows judgment for the insurer as a matter of law in a bad faith case. Instead, the division there concluded that the evidence was undisputed concerning fair debatability and, thus, summary judgment for the insurer was appropriate. The panel specifically noted that the plaintiff had failed to establish a triable issue of fact as to either prong of a bad faith claim. *Zolman*, 261 P.3d at 498.

¶ 40 To the extent that Pinnacol contends its evidence of fair debatability defeated Schuessler's bad faith claim, we conclude that this proposition would be true only if the evidence of the reasonableness of its conduct were undisputed, and only if a reasonable person could not reach the same conclusion as the jury, when viewing the evidence in the light most favorable to Schuessler. *See Vaccaro*, at ¶ 45 (JNOV is warranted only if a reasonable person could not reach the same conclusion as the jury, when viewing the evidence in the light most favorable to the nonmovant); *Zolman*, 261 P.3d at 497 ("What constitutes reasonableness under the circumstances is ordinarily a question of fact for the jury."). And we conclude that, here, reasonableness is disputed, and that a reasonable person could reach the same conclusion as the jury.

¶ 41 Pinnacol asserts that it relied on the opinion of Dr. Osuna that Schuessler's injury might not be work related because (1) Schuessler delayed in reporting the injury; (2) his medical condition was more consistent with chronic degenerative changes than with an acute injury; and (3) the symptom spectrum was inconsistent with established disease patterns. Pinnacol also asserts that, based upon the lack of records produced by Merrill, there was no initial evidence that Schuessler was working for Merrill at the time of the asserted accident, or that he had installed a swamp cooler on the asserted date of injury.

¶ 42 However, three other physicians to whom Schuessler was referred stated that he had suffered a work injury, and Pinnacol's own claims representative initially confirmed that there was a valid claim. In addition, the president of Merrill informed Pinnacol's claims representative that Schuessler had been employed by it at the time of his injury.

¶ 43 Accordingly, we conclude that the trial court did not err in denying the motion for directed verdict or for JNOV.

### B. Excessive and Duplicative Damages

¶ 44 Pinnacol asserts that the jury awarded excessive and duplicative economic and noneconomic damages to Schuessler, warranting a new trial. It also asserts the trial

court erred in denying its motion for new trial on this ground. We disagree.

### 1. Standard of Review

¶ 45 The determination of damages is within the exclusive province of the jury, and we will not disturb the verdict on review unless it is so grossly and manifestly excessive as to indicate it was based on passion or prejudice for the plaintiff. *Valdez v. Pringle,* 143 P.3d 1069, 1073 (Colo.App.2005), *aff'd in part and rev'd in part,* 171 P.3d 624 (Colo.2007). Unless the award shocks the judicial conscience such that the court must conclude that passion, prejudice, corruption, or other improper causes likely tainted the award, the jury's award is considered inviolate. *Id.*

¶ 46 When reviewing a jury's award, we view the record in the light most favorable to the prevailing party by drawing every inference fairly deducible from the evidence in favor of that party. *Id.*

¶ 47 The decision to grant a new trial for excessive or inadequate damages rests in the trial court's sound discretion. *Black v. Waterman,* 83 P.3d 1130, 1135 (Colo. App.2003).

### 2. Law

¶ 48 An amount of damages need not be determined via a mathematical formula; it may be an approximation if the fact of damages is certain and there is some evidence from which the jury can make a reasonable estimation. *Margenau v. Bowlin,* 12 P.3d 1214, 1218 (Colo.App.2000). However, when a jury's award of damages is so grossly excessive as to indicate it was influenced by factors other than the presented evidence, the court should grant a new trial. *See Burns v. McGraw–Hill Broadcasting Co.,* 659 P.2d 1351, 1356 (Colo.1983).

### 3. Application

¶ 49. We first reject Schuessler's claim that Pinnacol failed to preserve the damages issue for appellate review because it failed to object to his presentation of evidence on this issue or to his request for $100,000 in economic damages and $500,000 in noneconomic damages in closing argument. The record is clear that Pinnacol adequately raised the issue in its evidentiary presentation, in its closing argument, and in its motion for new trial.

### a. Economic Damages

¶ 50 Pinnacol points out that it paid all benefits to which Schuessler was entitled, together with interest, following the ALJ's determination that Schuessler had sustained an injury in the course and scope of his employment with Merrill. These benefits included temporary partial disability payments covering wage losses. However, Schuessler's workers' compensation attorney testified at trial that he was entitled to receive a twenty percent contingent fee on all benefits, and at the time of trial, the attorney had been paid $16,000.

¶ 51 Schuessler further testified that he paid "thousands of dollars" in medical care costs, including payments for premiums, co-pays, deductibles, and medications. He also testified to several loans he took out, as well as the credit card debt he had accumulated. Additionally, a Kaiser employee testified that Schuessler advanced "thousands of dollars" in medical expenses.

¶ 52 Moreover,

[t]he basis for tort liability is the insurer's conduct in unreasonably refusing to pay a claim and failing to act in good faith, not the insured's ultimate financial liability. Therefore, the fact that an insurer eventually pays an insured's claims will not prevent the insured from filing suit against the insurer based on its conduct prior to the time of payment.

*Goodson v. American Standard Ins. Co.,* 89 P.3d 409, 414 (Colo.2004) (citation omitted).

¶ 53 In light of the record support for the award of economic damages, we decline to disturb the jury's verdict, and conclude that the trial court did not err in denying Pinnacol's motion for new trial on economic damages. *See Hauser v. Rose Health Care Systems,* 857 P.2d 524, 531 (Colo.App.1993) (jury award may not be disturbed unless it is completely without support in the record).

#### b. Noneconomic Damages

¶ 54 Pinnacol asserts that Schuessler's noneconomic damages should have been limited in time and scope, because his claim for emotional distress was based solely on the allegedly improper delay of about thirteen months in paying temporary partial disability payments to him. Pinnacol notes, correctly, that it paid back benefits with interest following the ALJ's award, and that Kaiser had been paying for medical benefits during the thirteen-month period, less Schuessler's co-payments. Pinnacol alternatively contends that the period of potential liability should only have been seven months, because there was a six-month delay in holding a workers' compensation hearing chargeable to Schuessler when his workers' compensation attorney joined additional respondents.

¶ 55 Pinnacol has cited no authority, nor have we found any, that restricts noneconomic damages in bad faith cases in such a manner. Instead, noneconomic damages generally include emotional distress, pain and suffering, inconvenience, fear and anxiety, and impairment of the quality of life. § 13–21–102.5(2)(b), C.R.S.2011; *Goodson*, 89 P.3d at 415. Moreover,

> [g]iven that insureds purchase insurance policies to obtain financial security and peace of mind, emotional distress is a likely and foreseeable consequence of a bad faith denial of the benefits afforded under the contract. The action of the insurer causing anxiety, stress, inconvenience, and financial risk to the insured by delaying payment owed under the policy contravenes a fundamental benefit of obtaining the insurance.
>
> ... [A]n unreasonable denial of insurance benefits—a necessary element of every claim for bad faith breach of insurance contract—can cause anxiety, fear, stress, and uncertainty, even when the benefits are eventually paid.

*Goodson*, 89 P.3d at 417.

¶ 56 Here, Schuessler testified to his emotional distress and anger at not receiving benefits, the impact of working in pain when he needed time to recover, and the financial pressure and anxiety from not having money to cover his costs. He also testified that Pinnacol accused him of lying about his injury.

¶ 57 Considering this evidence in the light most favorable to the verdict, we conclude that there is record support for the noneconomic damages award, and further conclude that the amount awarded is not so grossly and manifestly excessive as to indicate that it was based on passion or prejudice. Nor does the award shock the conscience such that we must conclude that passion, prejudice, corruption, or other improper causes likely tainted the award.

#### c. Rejection of Evidence

¶ 58 Pinnacol further contends that the damage award was affected by the trial court's erroneous failure to admit an exhibit it tendered at trial. We disagree.

¶ 59 The decision to admit or reject evidence is left to the discretion of the trial court. *Camp Bird Colo., Inc. v. Bd. of County Comm'rs*, 215 P.3d 1277, 1289 (Colo.App. 2009). We review for an abuse of discretion. *Id.* An abuse of discretion occurs when a ruling is manifestly arbitrary, unreasonable, or unfair. *Wark v. McClellan*, 68 P.3d 574, 578 (Colo.App.2003).

¶ 60 Here, Pinnacol's exhibit depicted the amount and duration of its payments to Schuessler in chart form. The trial court rejected the exhibit, stating that its substance was not a significant issue in the case and its admission would be a waste of time.

¶ 61 We perceive no abuse of discretion. The information contained in the exhibit was covered by other evidence introduced. Moreover, it was undisputed that Pinnacol had made payment for ongoing wage loss and medical benefits.

#### d. Duplicative Damages

¶ 62 Pinnacol asserts that the jury awarded duplicative damages because it awarded Schuessler the same amount of noneconomic damages that it awarded against Wolter. We reject this contention.

¶ 63 A plaintiff generally may not receive a double recovery for the same

wrong. *Lexton–Ancira Real Estate Fund v. Heller,* 826 P.2d 819, 823 (Colo.1992).

¶ 64 When multiple claims are presented that are duplicative in terms of their recoverable damages, an instruction prohibiting multiple recoveries for the same damages must be given. *Rusch v. Lincoln–Devore Testing Lab., Inc.,* 698 P.2d 832, 834 (Colo.App.1984). This rule prohibiting double recovery for the same injury on multiple claims for relief also applies in cases involving multiple defendants. *Quist v. Specialties Supply Co.,* 12 P.3d 863, 866 (Colo.App.2000).

¶ 65 Here, the trial court instructed the jury that Schuessler had sued for the same injuries, damages, and losses on two different claims for relief, and that if it found for Schuessler on more than one claim, it could award damages only once. We presume the jury followed this instruction. *See Qwest Services Corp. v. Blood,* 252 P.3d 1071, 1088 (Colo.2011) (a jury is presumed to have followed the instructions, and absent evidence to the contrary, its award will not be disturbed). Pinnacol has failed to overcome this presumption.

### e. Bias, Prejudice, and Passion

¶ 66 Pinnacol asserts that the jury awarded excessive damages based on testimony, exhibits, and arguments that were irrelevant and highly prejudicial. It cites a number of instances where Schuessler's counsel was allowed to question witnesses over objection on matters relating to its finances and business practices, its employment of an attorney to defend against Schuessler's workers' compensation claim, and her asserted improper and unethical conduct. It also contends that the damages award was induced by improper opening statements and closing arguments of counsel.

¶ 67 Pinnacol has failed, however, to include any legal authority supporting its position, or to recite appropriate standards of review. We could, therefore, decline to consider these assertions. *See* C.A.R. 28(a). However, having reviewed the record citations, we perceive nothing meriting reversal.

¶ 68 Therefore, we decline to disturb the award and conclude that the trial court did not abuse its discretion in denying Pinnacol's motion for new trial.

### C. Schuessler's Insurance Expert

¶ 69 Pinnacol asserts that the trial court erred in allowing Schuessler's bad faith insurance expert to testify at trial. We disagree.

### 1. Standard of Review and Law

¶ 70 The determination of whether a witness is qualified to testify as an expert witness is committed to the discretion of the trial court and will not be disturbed absent a showing of a clear abuse of that discretion. *Carder, Inc. v. Cash,* 97 P.3d 174, 186 (Colo.App.2003). In the case of an expert witness possessing experienced-based specialized knowledge that is not dependent on a scientific explanation, a trial court must find that the testimony would be useful to the trier of fact and that the witness is qualified to render an expert opinion on the subject. CRE 702; *Tatum v. Basin Resources, Inc.,* 141 P.3d 863, 868 (Colo.App.2005). In making this determination, a court must also find that the expert's proposed testimony is both relevant under CRE 402 and not unfairly prejudicial under CRE 403. *Tatum,* 141 P.3d at 868.

### 2. Application

¶ 71 Here, Schuessler introduced evidence that his expert held an insurance adjuster's license as well as a manager's license in California. He had worked for a national insurance company from 1970 through 1995 and had adjusted and supervised claims in all fifty states. He had also been allowed to testify in workers' compensation bad faith cases in Arizona, California, and Hawaii, and was self-employed as an industry consultant and expert. He had been qualified at least fifteen times as an expert witness. The trial court permitted Pinnacol to conduct voir dire on the expert's qualifications and determined that the witness was qualified to render opinions in the field.

¶ 72 We perceive no abuse of discretion. Pinnacol's arguments that the expert had not worked for an insurance adjusting company

for fifteen years, had spent most of his career in California, and was not familiar with Colorado workers' compensation law do not preclude, as a matter of law, the qualification of this expert. We are not aware of, nor does Pinnacol cite, any authority to support a per se requirement that an expert should be excluded unless he or she has actually adjusted a workers' compensation claim in Colorado.

¶ 73 Moreover, Pinnacol cross-examined Schuessler's expert and its own expert pointed out areas where it contended Schuessler's expert was incorrect. The jury was able to hear both experts' testimony and determine the relative credibility of each. *See Klein v. State Farm Mut. Auto. Ins. Co.*, 948 P.2d 43, 49–50 (Colo.App.1997) (once a witness qualifies as an expert, his or her opinions that cannot be supported are an issue of weight, not admissibility).

### D. Liability of a Nonparty

¶ 74 Pinnacol asserts that the trial court erred in rejecting its tendered instruction concerning the liability of a designated nonparty. We are not persuaded.

### 1. Standard of Review

¶ 75 Trial courts have a duty to correctly instruct juries on all matters of law. *Day*, 255 P.3d at 1067.

¶ 76 The failure to provide a jury instruction on nonparty liability when the evidence supports it is reversible error. *Pedge v. RM Holdings, Inc.*, 75 P.3d 1126, 1127 (Colo.App.2002).

### 2. Law

¶ 77 In a civil tort case, a defendant may designate nonparties it contends are wholly or partially at fault for producing the plaintiff's claimed injuries, damages, or losses. *See* § 13–21–111.5(1) & (3)(a), C.R.S. 2011.

¶ 78 Courts should construe designation requirements strictly to avoid a defendant attributing liability to a nonparty from whom the plaintiff cannot recover. *See Redden v. SCI Colo. Funeral Servs., Inc.*, 38 P.3d

75, 80 (Colo.2001); *see also Miller v. Byrne*, 916 P.2d 566, 577 (Colo.App.1995) (ruling nonparty designation appropriately stricken because it did not satisfy the element of "duty" in the liability equation; the General Assembly intended nonparty designations to be only for individuals or entities that could be found legally liable).

¶ 79 Under well-settled tort jurisprudence, a claimant alleging negligence of another party must establish the existence of a duty, a breach of that duty, causation, and damages. *Observatory Corp. v. Daly*, 780 P.2d 462, 465 (Colo.1989). Fault is broader than negligence, including, for example, intentional torts, but it likewise implies legal responsibility for the purposes of the designation statute. *Redden*, 38 P.3d at 80.

### 3. Application

¶ 80 Here, Pinnacol designated Schuessler's employer, Merrill, as a nonparty at fault. At trial, Pinnacol produced evidence that Merrill failed to provide records to substantiate that Schuessler was working for it at the time of his accident, or was injured while installing a swamp cooler, until many months after Schuessler had submitted his workers' compensation claim.

¶ 81 We are not convinced Pinnacol established that Merrill had a legal duty to Schuessler to maintain and immediately produce employment records such that a violation of that duty would give rise to a claim against it by Schuessler. *See id.* at 81 (when a court does not discern a defendant has established legal culpability against an alleged nonparty, the designation is properly disallowed); *see also Stone v. Satriana*, 41 P.3d 705, 712 (Colo.2002) (a nonparty-at-fault designation is only proper when the defendant has made out a prima facie case that the nonparty breached a legal duty to the plaintiff).

¶ 82 We therefore reject this contention.

### E. Comparative Fault of Schuessler

¶ 83 Pinnacol asserts that the trial court erroneously rejected its instruction on the comparative fault of Schuessler. We are not persuaded.

### 1. Standard of Review

¶ 84 A party is entitled to an instruction on its defense when there is evidence to support it and it is applicable under the law. *See Community Hosp. v. Fail,* 969 P.2d 667, 676 (Colo.1998).

### 2. Application

¶ 85 Here, we will assume, without deciding, that an insurer can assert comparative bad faith or fault of the insured as an affirmative defense in a bad faith action. *But see Kransco v. American Empire Surplus Lines Ins. Co.,* 23 Cal.4th 390, 402, 97 Cal.Rptr.2d 151, 2 P.3d 1, 9 (2000) (insurer cannot assert comparative bad faith of insured as an affirmative defense). Even so assuming, we conclude Pinnacol's assertions that Schuessler was comparatively at fault because he asked for a postponement of the workers' compensation hearing, failed to attend an appointment with a second doctor, and initially delayed several weeks before going to the doctor after the injury, are insufficient to warrant an instruction. Among other things, there is no evidence that such actions were a cause of his claimed injuries.

### F. Costs

¶ 86 Pinnacol asserts that the trial court's award of costs should be reversed or reduced. We agree in part.

### 1. Standard of Review

¶ 87 An appellate court will not overturn an award of costs on appeal absent a showing that the trial court abused its discretion. *Fort Morgan Reservoir & Irrigation Co. v. Groundwater Appropriators of S. Platte River Basin, Inc.,* 85 P.3d 536, 541 (Colo.2004).

### 2. Law

¶ 88 A plaintiff is entitled to recover all of his costs under the mandatory provisions of section 13–16–104, C.R.S.2011. But the record must contain evidence that costs are necessary before those costs will be awarded. *Regents ex rel. University of Colorado v. Harbert Constr. Co.,* 51 P.3d 1037, 1042 (Colo.App.2001).

¶ 89 The decision to allocate costs between parties or instead impose joint and several liability therefor lies with the trial court. *GF Gaming Corp. v. Taylor,* 205 P.3d 523, 528–29 (Colo.App.2009) (court may allocate costs among parties, including between parties on the same side of the case); *Hale v. Erickson,* 23 P.3d 1255, 1258 (Colo.App.2001). However, courts have declined to extend such cost sharing when costs are clearly apportionable to one party and not the other. *GF Gaming,* 205 P.3d at 528.

### 3. Application

¶ 90 Pinnacol asserts that the trial court's award of costs includes amounts attributable solely to Schuessler's medical malpractice claim against Wolter, which was entirely independent of the bad faith claim. Specifically, Pinnacol identifies a cost award for one-half of the fees charged by three experts who testified solely on the medical negligence claim against Wolter.

¶ 91 Here, the trial court determined:

> While there is some common sense to Pinnacol's position, the Court notes that the Defendants mounted a coordinated defense and that they shared costs relating to each other's claims. If such an arrangement was good enough for the Defendants, it seems reasonable that they should somewhat share in the assessment of costs Plaintiff incurred in pursuing his claims against them. In addition to the coordinated defense and sharing of costs, there was a close nexus between Plaintiff's bad faith claim and his medical malpractice claim. The costs were interrelated in many ways and now to segregate specific costs to specific claims or specific items of damages is unrealistic.

¶ 92 We agree that the award of one-half of the fees of the following three experts, which can only fairly be attributable to the case against Wolter, should not be assessed against Pinnacol:

1. Dr. Woodcock, who testified concerning Wolter's negligence and gave no opinion as to Pinnacol.

2. Ms. Shriver, an occupational therapist, who conceded that her opinions related only to the injuries resulting from Wolter's surgery on Schuessler.

3. Dr. Pacey, who testified concerning Schuessler's future economic damages as a result of his physical injuries arising from the surgery.

*See id.* at 528–29 (declining to assess deposition costs against a party for whom depositions were not necessary); *Clayton v. Snow,* 131 P.3d 1202, 1203 (Colo.App.2006) (expert witness fees should not have been assessed against a party where they were not reasonably necessary to the case against that party).

¶ 93 Accordingly, on remand, the trial court should reduce the cost award against Pinnacol for that part of the award attributable to these experts.

### G. Prejudgment Interest

¶ 94 Pinnacol asserts that the trial court improperly awarded prejudgment interest. We agree in part.

#### 1. Failure to Claim Interest

¶ 95 Pinnacol contends that Schuessler's complaint failed to specify the date from which the interest should accrue under section 13–21–101, C.R.S.2011. We disagree.

##### a. Standard of Review

¶ 96 We interpret statutes de novo. *Morris v. Goodwin,* 185 P.3d 777, 779 (Colo. 2008).

##### b. Law

¶ 97 Pursuant to section 13–21–101, a party must request interest from either the date suit is filed or the date an action accrues. The failure to claim interest under this statute means that the right is waived. *Clark v. Buhring,* 761 P.2d 266, 268 (Colo.App.1988).

##### c. Application

¶ 98 Here, Schuessler did not specify which date he was relying upon in requesting prejudgment interest. But his complaint demands "pre and post judgment interest as provided by law," and there is no requirement under the statute to specify in the complaint the particular date from which interest is claimed. *See Briggs v. Cornwell,* 676 P.2d 1252, 1253 (Colo.App.1983) (requesting "interest as provided by statute" was sufficient to request interest accruing before the filing of the complaint); *see also Martinez v. Jesik,* 703 P.2d 638, 640 (Colo.App. 1985) (although the plaintiff did not specifically request interest on the judgment from the date the action accrued, plaintiff's prayer for interest "and such other and further relief as to the Court seems proper" was sufficient to comply with pleading requirement of C.R.C.P. 8(a)).

#### 2. Interest on Economic Damages

¶ 99 Relying on *Herod v. Colorado Farm Bureau Mutual Insurance Co.,* 928 P.2d 834 (Colo.App.1996), Pinnacol asserts that section 13–21–101 does not apply to Schuessler's economic damages. We agree.

¶ 100 In *Herod,* a division of this court held that section 13–21–101 provides for prejudgment interest on damages for personal injuries, and that an injury is personal when it impairs the well-being or the mental or physical health of the injured party. It further held that when an insurer improperly denies a claim, "prejudgment interest is permitted on the amount of compensatory damages reflecting the benefit that the insured would have realized under the insurance contract, from the time of the wrongful withholding." *Id.* at 838.

¶ 101 Here, the economic damages were assessed for the amounts Schuessler had to pay his workers' compensation attorney, and for out-of-pocket expenses. Those damages did not result from a personal injury inflicted by Pinnacol because they did not result from an impairment of Schuessler's mental or physical health or well-being.

¶ 102 Accordingly, on remand, the court should compute the prejudgment interest on Schuessler's economic damages based on the wrongful withholding statute, section 5–12–102(1)(a), C.R.S.2011, rather than section 13–21–101.

## H. Subrogation Claim

¶ 103 Pinnacol asserts that the trial court improperly ruled that it had waived its right to make a subrogation claim against Schuessler's recovery from Wolter. Although we are remanding for a new trial concerning Schuessler's claim against Wolter, this issue may arise in the event Schuessler again recovers damages from Wolter. Therefore, we will address it.

### 1. Standard of Review

¶ 104 The proper construction of a provision of the Workers' Compensation Act is a question of law that we review de novo. *Anderson v. Longmont Toyota, Inc.,* 102 P.3d 323, 326 (Colo.2004).

¶ 105 Whether a waiver of rights has occurred generally presents a question of fact. *See Whatley v. Summit County Bd. of County Comm'rs,* 77 P.3d 793, 803 (Colo.App. 2003). However, when the facts are undisputed, we may review the application of the law to those undisputed facts de novo. *See Moore v. City & County of Denver,* 42 P.3d 82, 84 (Colo.App.2002) (if all relevant evidence has been presented to the trial court, and the trial court need not resolve disputed issues of fact, the question of waiver is one of law).

### 2. Law

¶ 106 A workers' compensation insurer has a right of subrogation against a third party for all amounts the third party pays to an injured employee for damages the third party caused. § 8–41–203(1)(b), C.R.S.2011. The subrogation right extends to "all moneys collected from the third party causing the injury" for all economic damages and physical impairment that are paid or payable in the future. § 8–41–203(1)(d)(I), C.R.S.2011.

¶ 107 The policy behind the statute is to avoid double recovery by claimants who receive workers' compensation benefits and recover those same benefits from the tortfeasor without reimbursing the insurer. *See Colorado Compensation Ins. Auth. v. Jorgensen,* 992 P.2d 1156, 1165–66 (Colo. 2000). The right of an insurer to recover is not predicated upon its participation at trial.

*Martinez v. St. Joseph Hosp. & Nursing Home,* 878 P.2d 13, 14 (Colo.App.1993).

### 3. Application

¶ 108 Here, in its motion requesting subrogation, Pinnacol argued that it had admitted liability for workers' compensation benefits, and had paid over $86,000 in temporary partial disability and $52,000 in medical benefits. It further argued that it was entitled to assert its subrogation rights against the amount awarded against Wolter for future lost earnings, depending on how long Schuessler continued to receive temporary partial disability payments until reaching maximum medical improvement.

¶ 109 The trial court denied Pinnacol's request, concluding:

> Now, after fighting Plaintiff and requiring him to proceed on his own, Pinnacol seeks to benefit from Plaintiff's effort and expense by way of a subrogation claim. And it simultaneously opposes paying any of Plaintiff's costs related to his successful medical negligence claim.
>
> . . . .
>
> Pinnacol cannot have it both ways. It is disingenuous to make a subrogation claim under these circumstances. Pinnacol's position reflects cynicism and self-interest at the expense of an injured worker and offends basic precepts of the workers' compensation scheme. Pinnacol has waived its right to make a subrogation claim. It could and should have asserted its subrogation rights at trial, or at least not opposed the jury being advised of its statutory rights. Pinnacol must live with its decision.

¶ 110 As noted, the right of an insurer to recover is not based upon an insurer's participation at trial. *See id.* And the undisputed facts here do not support a finding of waiver, which is the intentional relinquishment of a known right. *Leprino Foods Co. v. Indus. Claim Appeals Office,* 134 P.3d 475, 483–84 (Colo.App.2005). Absent subrogation, Schuessler may receive a double recovery, including both the money paid to him by Pinnacol directly in workers' compensation benefits and the money specified for the

same injury inflicted by Wolter. Such a windfall is not within the purposes of the statute, regardless of the ethics of Pinnacol's position.

¶ 111 Accordingly, on remand, Pinnacol may assert its subrogation rights. If Schuessler again obtains a recovery for such sums on retrial, Pinnacol has a right of subrogation under section 8–41–203(1)(b). *See Jorgensen,* 992 P.2d at 1165–66.

### IV. Schuessler's Cross–Appeal

#### A. Waiver of Attorney–Client Privilege

¶ 112 Schuessler contends that the trial court erred in its assessment of whether there was a waiver of the attorney-client privilege by Pinnacol. However, the documents in question are not in the record. Under these circumstances, Schuessler has forfeited the issue on appeal. *See People v. Jowell,* 199 P.3d 38, 45 (Colo.App.2008) (where the record does not contain material reviewed in camera, issue pertaining to that material is forfeited).

¶ 113 The judgment against Wolter is reversed. The judgment against Pinnacol is reversed as to apportionment of costs, assessment of prejudgment interest on economic damages, and denial of Pinnacol's subrogation right, and otherwise affirmed. The case is remanded for a new trial as to Wolter and further proceedings as to Pinnacol, all consistent with this opinion.

Judge HAWTHORNE and Judge J. JONES concur.