No. 21659.

MARVIN SCHLESSELMAN, INDIVIDUALLY, AND AS HUSBAND AND NEXT FRIEND OF SARAH SCHLESSELMAN, A MINOR *v.* RUTH GOUGE.
(431 P.2d 35)

Decided July 31, 1967.

ROBERT LELAND JOHNSON, for plaintiffs in error.

YEGGE, HALL, TREECE and EVANS, for defendant in error.

*En Banc.*

MR. JUSTICE PRINGLE delivered the opinion of the Court.

THIS is a medical malpractice suit brought by Marvin Schlesselman and his wife, Sarah Schlesselman, against Dr. Ruth Gouge. The plaintiffs in error will be referred to as the plaintiffs or as Marvin and Sarah, and the defendant in error will be referred to as the defendant.

The plaintiffs sought damages allegedly sustained by them as a result of the negligence of the defendant in diagnosing and treating Sarah. Trial was to a jury, which returned a general verdict for the defendant. The plaintiffs brought error from the judgment entered on that verdict.

The basic facts surrounding this controversy may be stated simply. Sarah, accompanied by Marvin, went to the defendant's office for a physical examination on August 28, 1961. Sarah told the defendant that she (Sarah) wanted to find out if she were pregnant. After

examination, the defendant told Marvin and Sarah that Sarah was not pregnant. The defendant diagnosed Sarah's condition as menstrual irregularity, prescribed drugs for Sarah, and made another appointment for Sarah to be examined on September 26, 1961. The parties do not agree as to the reason this second appointment was not kept, but it is clear that defendant did not examine Sarah again at any time after August 28, 1961. On November 4, 1961, Sarah began having abdominal cramps. On the morning of November 5, 1961, Sarah's cramps became more severe, and she was admitted to St. Joseph's Hospital. The attending physician at the hospital, a Dr. Ina Berzins, testified that Sarah's condition on November 5, 1961 was diagnosed as an inevitable abortion. On the morning of November 6, 1961, a surgical procedure known as a dilation and curettement was performed on Sarah (by Dr. Berzins) to make sure that the process of abortion had been safely completed. Dr. Berzins testified that in her opinion Sarah was six to seven weeks pregnant at the time of her admission to the hospital; and that Sarah had recovered fully and had no permanent ill effects or disability resulting from the abortion.

The plaintiffs sought damages on the theory that the defendant negligently failed to diagnose Sarah's pregnancy, and that, as a result of this negligent and incorrect diagnosis, the defendant prescribed a drug known as "Synthroid" which in turn caused the abortion. The plaintiffs also alleged that Sarah and Marvin each had talked to the defendant on the telephone on two occasions after the August examination, and that in each instance defendant negligently failed to instruct Sarah to come in for further examinations. The plaintiffs alleged that this negligence resulted in a failure to diagnose and treat Sarah's pregnancy, and in a failure to diagnose and treat the impending abortion at a time when it might still have been prevented.

The defendant's basic theory was that the original

diagnosis that Sarah was not pregnant was correct at the time that the diagnosis was made. Defendant alleged that Sarah must have become pregnant in the middle of September of 1961 — *after* the examination by defendant. In addition, defendant contended that the drug Synthroid could not have caused the abortion, but would actually have helped Sarah to maintain the pregnancy. Defendant also alleged that Sarah ceased using the drug about two weeks prior to the abortion, and that all of the residual effects of the drug would have worn off long before November 4, 1961. The defendant consistently denied ever having seen or talked to either of the plaintiffs after August 28, 1961.

Plaintiffs have assigned as error on this appeal almost every ruling of the trial court which was adverse to them in the course of the several days of trial. In all, there are 59 separate allegations of error (one of which has nine separate parts).

■ Four of the allegations of error (and parts of a fifth) are concerned with the refusal of the trial court to admit evidence, to hear testimony, or to allow argument to the jury relating to various claimed elements of damages. In view of the fact that the jury returned a verdict in favor of the defendant as to the basic issue of liability, these allegations of error are now moot and deserve no further consideration. *Schell v. Kullhem,* 127 Colo. 555, 259 P.2d 861.

■ Nine of the allegations of error relate to alleged misconduct on the part of the defendant's counsel in his closing argument to the jury. Four of these relate to alleged misconduct to which no objection was made at trial and which consequently are not properly before this Court. *Spears Free Clinic & Hospital For Poor Children v. Maier,* 128 Colo. 263, 261 P.2d 489.

We find no merit in the other five allegations of alleged misconduct during closing argument:

"* * * Juries in this jurisdiction are always instructed that arguments of counsel are not evidence and the jury

in this case was so instructed. We are not inclined to attribute to any jury a lack of sufficient mentality or discrimination to recognize the difference between evidence and argument. * * *" *Newbury v. Vogel*, 151 Colo. 520, 527, 379 P.2d 811, 814.

Counsel are allowed wide latitude in making closing arguments to the jury. Defendant's counsel did not exceed the permissible bounds of argument in this case. ▮ Five of the allegations of error (and parts of a sixth) relate to the rulings of the trial court on the instructions to the jury. Plaintiffs object to five of the instructions given by the trial court, and also object to the refusal of each of the nine instructions tendered by the plaintiffs. The record shows that the instructions given by the trial court, when taken as a whole, correctly state the law as applied to the facts of this case, and that the instructions tendered by the plaintiffs were either incorrect, repetitive, irrelevant, or related only to questions of damages which we held above were now moot in view of the general verdict for the defendant. See generally, *Dixon v. Norberg*, 113 Colo. 352, 157 P.2d 131; *Brown v. Hughes*, 94 Colo. 295, 30 P.2d 259; *Locke v. Van Wyke*, 91 Colo. 14, 11 P.2d 563; *Daly v. Lininger*, 87 Colo. 401, 288 P. 633. The trial court did not commit error in the instructions given to the jury, and did not commit error in refusing the tendered instructions.

Thirty-six of the remaining forty allegations of error relate to rulings of the trial court on the admission of testimony, the admission of exhibits, and various rulings concerning actions of counsel during the course of the trial. We have examined each of these 36 allegations of error, and we find that 22 of them have absolutely no merit. In these 22 allegations of error, plaintiffs have assigned as error many discretionary rulings of the trial court. It is apparent that during the course of the trial counsel for plaintiffs asked numerous questions which were repetitious, argumentative, leading, harrassing, or

which were asked in improper form. Numerous questions were also asked which sought hearsay answers, or answers on irrelevant subjects. In most instances, the trial court was scrupulously careful to point out why the objection was being sustained, and in many instances went on to point out how plaintiff's counsel could elicit the information he sought by *proper* questions. Much of the information which is alleged to have been excluded by these rulings was in fact elicited later without objection.

■ Eleven of the allegations of error relate to various rulings of the trial court excluding from evidence several documents relating to the drug Synthroid which was prescribed by the defendant for Sarah. One of the documents was a manufacturer's brochure relating to Synthroid. Plaintiff sought to show that the "contra-indications" section of the brochure showed that Synthroid should not have been prescribed by the defendant for Sarah without prior laboratory tests. But the brochure was irrelevant and immaterial to the issues as they stood in this case. There was no evidence in the record that Sarah had at the time of the prescription any of the conditions which were to be guarded against. In addition, the brochure was correctly excluded from evidence since the document showed on its face that it was copyrighted *after* the date of the prescription, August 28, 1961. The defendant repeatedly stated that she did not remember ever having read this particular brochure, did not know if the brochure had been changed since August 28, 1961, and did not know what the brochure contained at the time she prescribed the drug for Sarah. Neither the defendant nor any other witness ever stated that the brochure which plaintiffs sought to introduce was the same or substantially the same as the brochure which was in existence at the time when defendant prescribed the drug for Sarah. The trial court, under these circumstances, correctly excluded the brochure.

■ Plaintiffs also sought to introduce two other ex-

hibits relating to Synthroid. One of the exhibits was a photostatic reproduction of one page of the 1960 edition of the *Physician's Desk Reference,* and the other exhibit was a copy of the 1961 edition of the same book. Plaintiffs claimed that both exhibits were essential for purposes of *impeaching* the defendant's testimony. However, the record shows that defendant repeatedly and categorically denied having relied on the contents of either edition of the book in prescribing for Sarah, but relied rather on her clinical experience and general knowledge. Just as in the case of the brochures, there appears to be nothing in the *Physician's Desk Reference* book which tends to impeach any testimony given by the defendant. We find no prejudicial error in the trial court's ruling.

█ The plaintiffs also allege that they were unduly restricted in the use of the defendant's deposition during cross-examination of the defendant. At two separate points during the cross-examination of the defendant, the trial court restricted plaintiff's use of the deposition. In the first instance, the plaintiffs sought to show that the defendant's testimony on the stand as to the *number* of Snythroid tablets prescribed for Sarah was different from the testimony in the deposition. The defendant had already testified during the earlier cross-examination that the statement in the deposition was incorrect and had given her explanation of the inconsistency. No further purpose would have been served by cumulating more evidence as to this admitted inconsistency. In the second instance, the plaintiffs again sought to impeach the testimony of the defendant by showing an alleged inconsistency between the deposition and the testimony at trial. Here, however, the objection was sustained solely on the ground that the plaintiffs attempted to make improper use of the deposition. The plaintiffs never asked the defendant if her testimony at trial was consistent with her deposition. Instead, plaintiffs' counsel simply began reading from the deposition. The trial court correctly informed counsel that this was an improper

method for using the deposition, and that a proper foundation must be laid for impeachment. Contrary to plaintiffs' assertion in the opening brief, at no time did the trial court tell the plaintiffs that they could not use the deposition at all.

 In another allegation of error, the plaintiffs claim that the trial court abused its discretion in allowing defendant to put on an expert medical witness during the plaintiffs' case. The record shows that the sequence of witnesses was not deliberately disrupted. The trial consumed more time than either the parties or the trial court had anticipated, and the medical witness arrived at the time when he normally would have been called upon to testify only to find that the trial itself had not reached that point. The trial court carefully informed the jury about the interruption in the normal order of witnesses, and plaintiffs were afforded full opportunity for cross-examination of the witness. Plaintiffs have failed to point out any prejudice resulting from the ruling, and under these circumstances we cannot say that the trial court abused its discretion. The order of proof and of witnesses is normally left to the sound discretion of the trial court. *Ball v. Wright*, 118 Colo. 410, 195 P.2d 739; *Shearer v. Snyder*, 115 Colo. 232, 171 P.2d 663; *Kline v. Slater*, 95 Colo. 489, 37 P.2d 381.

 The last four allegations of error all relate to the sufficiency and weight of the evidence. The plaintiffs claim that the evidence is insufficient to sustain the verdict, and that in fact the greater weight of the evidence is against the verdict. We do not agree. There is ample evidence in the record from which the jury might properly have found: that Sarah was *not* pregnant at the time of the examination by defendant on August 28, 1961; that Sarah did not become pregnant until the middle of September of 1961; that Sarah failed to return for the next scheduled appointment or to make a new appointment; and that the drug Synthroid would

not have caused Sarah to abort, but would have, in fact, helped her to maintain the pregnancy.

Plaintiffs also allege that defendant was negligent as a matter of law because there was a miscarriage. This assertion overlooks the important issue of causation which we have already shown was one upon which there was, at least, conflicting evidence. Suffice it to say that we find no merit in these contentions. In similar cases we have held repeatedly that: "* * * the fact that there was a lamentable result is not of itself evidence of negligence on the part of the defendant. * * *" *Brown v. Hughes*, 94 Colo. 295, 30 P.2d 259; and see *Locke v. Van Wyke, supra; McGraw v. Kerr*, 23 Colo. App. 163, 128 P. 870.

The judgment is affirmed.

MR. CHIEF JUSTICE MOORE not participating.