2014 COA 117

**Michael LEAF, Plaintiff-Appellant,**

v.

**Peter BEIHOFFER, Defendant-Appellee.**

**Court of Appeals No. 13CA0832**

Colorado Court of Appeals,
Div. V.

September 11, 2014

Nathan Berger & Associates, Nathan M. Berger, Denver, Colorado; The Ferris Law Firm, LLC, John P. Ferris, Denver, Colorado, for Plaintiff-Appellant

The Ross-Shannon Law Firm, P.C., Bradley Ross-Shannon, Gregory F. Szydlowski, Lakewood, Colorado, for Defendant-Appellee

Opinion by JUDGE J. JONES

¶ 1 In this negligence action, plaintiff, Michael Leaf, appeals the district court's judgment entered on a jury verdict in favor of defendant, Peter Beihoffer. We affirm.

¶ 2 One of the issues Mr. Leaf presents for review is one of first impression in Colorado: whether evidence of a witness's failure to file income tax returns for several years is probative of the witness's character for truthfulness and therefore admissible under CRE 608(b) to impeach the witness's credibility. We hold that it is. Accordingly, we reject Mr. Leaf's challenge to the district court's ruling allowing such evidence.

## I. Background

¶ 3 Mr. Beihoffer's car rear-ended Mr. Leaf's taxicab on February 26, 2010, on an icy road. A police officer estimated that Mr. Beihoffer's car was traveling at fifteen miles per hour when it struck Mr. Leaf's stopped car. The only property damage resulting from the crash was paint transfer on the bumpers of the two vehicles.

¶ 4 Officer John Smyly testified that Mr. Beihoffer was unsteady after the accident and smelled of marijuana. Mr. Beihoffer failed roadside sobriety tests, admitted that he had taken two Xanax tablets before driving, and subsequently tested positive for marijuana. Police found six Xanax tablets in Mr. Beihoffer's pocket and marijuana in the vehicle. "I believe he was impaired," Officer Smyly testified. Mr. Beihoffer ultimately pleaded guilty to a misdemeanor charge of driving under the influence of drugs (DUI), in violation of section 42–4–1301(1)(a), C.R.S. 2013.

¶ 5 Mr. Leaf did not complain of injuries at the scene. However, he sought emergency room treatment for pain nine days after the accident and began treatment with a chiropractor two months after the accident.

¶ 6 Mr. Leaf sued Mr. Beihoffer for negligence, alleging that the collision had caused him permanent spinal injuries.[1] Mr. Beihoffer denied that he had been negligent; he also asserted that Mr. Leaf had suffered no injuries in the crash, and that any permanent spinal injuries were caused by Mr. Leaf's serious ski accidents rather than the collision.

¶ 7 A jury found that (1) Mr. Beihoffer had not been negligent; (2) Mr. Leaf had not suffered any injuries or damages; and (3) there was no causal connection between the alleged negligence and the claimed injuries. Accordingly, the court entered judgment in Mr. Beihoffer's favor.

## II. Discussion

¶ 8 Mr. Leaf contends that the district court erred by (1) not giving preclusive effect to Mr. Beihoffer's DUI guilty plea and by excluding evidence that Mr. Beihoffer had pleaded guilty to DUI; (2) rejecting his proposed jury instruction defining DUI; (3) excluding medical evidence he provided to Mr. Beihoffer after the court's cut-off date for discovery; and (4) allowing impeachment evidence that he had failed to file income tax returns for several years. We discern no reason to reverse.

### A. Standard of Review

¶ 9 We review a district court's evidentiary rulings for an abuse of discretion. *Wal–Mart Stores, Inc. v. Crossgrove*, 2012 CO 31, ¶ 7, 276 P.3d 562; *Mullins v. Med. Lien Mgmt., Inc.*, 2013 COA 134, ¶ 35. "A trial court has considerable discretion in ruling upon the admissibility of evidence, and we will find an abuse of discretion only if its ruling is manifestly arbitrary, unreasonable, or unfair." *Wark v. McClellan*, 68 P.3d 574, 578 (Colo.App.2003).

---

1. Mr. Leaf initially asserted claims for negligence and negligence per se, but ultimately decided not to pursue the negligence per se claim.

¶ 10 We also review a district court's "decision to give a particular jury instruction for an abuse of discretion." *Day v. Johnson,* 255 P.3d 1064, 1067 (Colo.2011); *see Bedor v. Johnson,* 2013 CO 4, ¶ 8, 292 P.3d 924.

¶ 11 Mr. Leaf preserved the issues he raises on appeal. So if we determine that the court erred in admitting or excluding evidence or in refusing to give the jury the particular instruction at issue, we must reverse the judgment unless we determine that any such error was harmless. An error was harmless if it did not affect a party's substantial rights. C.R.C.P. 61; *see* CRE 103(a). "An error affects a substantial right only if 'it can be said with fair assurance that the error substantially influenced the outcome of the case or impaired the basic fairness of the trial itself.'" *Bly v. Story,* 241 P.3d 529, 535 (Colo.2010) (quoting in part *Banek v. Thomas,* 733 P.2d 1171, 1178 (Colo.1986)).

## B. Analysis

¶ 12 To prevail on a negligence claim, the plaintiff must prove (1) the existence of a legal duty of the defendant to the plaintiff; (2) breach of that duty; (3) injury and damages to the plaintiff; and (4) a sufficient causal connection between the defendant's breach and the plaintiff's damages. *E.g., HealthONE v. Rodriguez ex rel. Rodriguez,* 50 P.3d 879, 888 (Colo.2002); *Connes v. Molalla Transp. Sys., Inc.,* 831 P.2d 1316, 1320 (Colo.1992). If a plaintiff fails to establish any one of these elements, any errors related to other elements are necessarily harmless because the plaintiff cannot prevail in any event. *See, e.g., Schlesselman v. Gouge,* 163 Colo. 312, 316, 431 P.2d 35, 37 (1967) (refusing to consider contentions of error related to damages where the jury returned a verdict in favor of the defendant on "the basic issue of liability"); *Vanderpool v. Loftness,* 2012 COA 115, ¶ 31, 300 P.3d 953 (jury findings against the plaintiff on the

issues of liability and causation rendered harmless any error related only to damages); *Dunlap v. Long,* 902 P.2d 446, 448–49 (Colo. App.1995) (jury determination that the plaintiffs suffered no injury or damages rendered harmless any error related only to the defendant's liability).

¶ 13 In this case, the jury returned a special verdict form, finding against Mr. Leaf on the elements of breach of duty, damages, and causation. (Mr. Beihoffer did not deny that he owed a legal duty to Mr. Leaf to be reasonably careful.) Thus, unless Mr. Leaf can show error relating to all three of those elements, reversal is not warranted.

¶ 14 Mr. Leaf's first two contentions of error—the exclusion of Mr. Beihoffer's guilty plea to DUI, and the rejection of Mr. Leaf's proposed jury instruction on DUI— relate only to the element of breach of duty.[2] His third contention of error—the exclusion of medical evidence—relates only to the element of damages. But his final contention of error—the admission of evidence that he failed to file income tax returns—concerns an attack on his credibility generally, and therefore relates to all three elements. This is because Mr. Beihoffer's counsel introduced evidence of Mr. Leaf's failure to file tax returns to cast doubt on Mr. Leaf's truthfulness, and, under the facts of this case, the jurors' perceptions of Mr. Leaf's character for truthfulness potentially affected their decisions on every element of his claim. We address this contention first.

### 1. The Tax Return Evidence Was Admissible

¶ 15 Mr. Leaf contends that the district court committed reversible error by allowing impeachment evidence that he had failed to file income tax returns for several years, because that evidence was not proba-

---

2. Mr. Leaf argues in his reply brief that Mr. Beihoffer's guilty plea was probative of Mr. Beihoffer's credibility generally and, therefore, relevant to all elements of his claim. However, evidence of a misdemeanor conviction is not admissible to impeach the general credibility of a witness. *People v. Silva,* 987 P.2d 909, 918 (Colo.App.1999); *see* § 13–90–101, C.R.S.2013; *cf. Banek v. Thomas,* 733 P.2d 1171, 1178 (Colo. 1986) (evidence of misdemeanor conviction should have been allowed for the limited purpose of impeaching specific testimony). Thus, Mr. Leaf could not have offered it legitimately for the purpose of attacking Mr. Beihoffer's general credibility.

tive of his truthfulness and was unfairly prejudicial. We are not persuaded.

### a. Procedural Facts

¶16 Mr. Leaf had not filed income tax returns for several years, though legally required to do so.[3] Mr. Beihoffer's counsel first raised this during his opening statement. Mr. Leaf's counsel objected. The district court sustained the objection. Mr. Beihoffer's counsel then argued in a bench conference that the evidence was admissible under CRE 608(b) to impeach Mr. Leaf's credibility. The court said that it would look at the issue more closely before Mr. Leaf testified.

¶17 During a conference in the midst of trial, outside the jury's presence, the parties' attorneys again argued the issue. The court ruled that Mr. Leaf's truthfulness regarding his injuries and the cause thereof was relevant, and that a failure to file tax returns was a form of dishonesty. The court further ruled that, assuming Mr. Leaf's truthfulness became an issue during his direct testimony, it would allow evidence that Mr. Leaf had failed to file tax returns to impeach his credibility during cross-examination.

¶18 Mr. Beihoffer's counsel asked Mr. Leaf on cross-examination whether he had filed tax returns since 2006. Mr. Leaf said that he had not, and admitted that he had been legally required to do so.

¶19 Mr. Beihoffer's counsel argued during closing that Mr. Leaf's failure to file tax returns and pay taxes undermined his credibility and "indicates that he is willing to do what is necessary for his own financial gain."

### b. Applicable Law

¶20 CRE 608(b) gives the district court discretion to admit evidence of prior conduct that is offered to impeach a witness's credibility. *See People v. Segovia*, 196 P.3d 1126, 1129–30 (Colo.2008) (clarifying that such evidence should be analyzed under CRE 608(b) rather than CRE 404(b)); *People v. Thomas*, 2014 COA 64, ¶39, —— P.3d —— (same). It

provides that a cross-examiner may attack a witness's character for truthfulness with questions about specific instances of his conduct, but only if the conduct is "probative of truthfulness or untruthfulness." CRE 608(b); *see People v. Kraemer*, 795 P.2d 1371, 1377 (Colo.App.1990) ("[T]he propriety of such use depends on whether it reflects on the witness' character for truthfulness".).

¶21 In *Segovia*, the supreme court recognized the divergence among jurisdictions between a broad view that any bad conduct is probative of truthfulness and a narrow view that only deceptive conduct is probative of truthfulness. *Id.* at 1131–32. The court adopted a middle course. In finding shoplifting to be probative of truthfulness, the court endorsed a fluid approach that relies on "common experience" to recognize dishonest behavior. *Id.* at 1132.

¶22 But there is no Colorado appellate decision addressing directly whether a witness's failure to file tax returns for multiple years bears on the witness's character for truthfulness. Two cases have touched on the issue.

¶23 In *Kraemer*, the prosecutor asked the defendant about his failure to file a state income tax return for one year. On appeal, the defendant argued that the questions were improper under CRE 404(b), which pertains to the introduction of evidence of other crimes, wrongs, or acts. The division held that because the evidence was offered to impeach the defendant's credibility, its admissibility was governed by CRE 608(b), not CRE 404(b). Analyzing the issue under CRE 608(b), the division appears to have concluded (or at least assumed without deciding) that a single failure to file, by itself, was not evidence of intentional wrongdoing, and therefore not admissible under CRE 608(b). *Kraemer*, 795 P.2d at 1377 (but holding that admission of the evidence was harmless).

¶24 In *Segovia*, in the course of discussing the admissibility of the defendant's prior shoplifting incident, the supreme court ob-

---

**3.** According to Mr. Beihoffer's offer of proof, Mr. Leaf was not required to file an income tax return for 2009, when he earned only $6207. Thus, the argument was that Mr. Leaf had failed to file tax returns for 2007, 2008, 2010, and 2011, because his income in each of those years exceeded the legal threshold above which a tax return must be filed.

served, in dictum, that in *Kraemer* the division had held that evidence of "intentionally failing to file tax returns" is probative of a witness's truthfulness. *Segovia*, 196 P.3d at 1131.

¶ 25 Many federal courts have addressed this issue. In the main, they hold that a witness's failure to file tax returns for several years may indicate intentional wrongdoing, is therefore probative of the witness's character for truthfulness, and, thus, is admissible under Fed.R.Evid. 608(b). *See, e.g., United States v. Fairchild*, 46 F.3d 1152, 1995 WL 21611, at \*3 (10th Cir. Jan. 12, 1995) (unpublished opinion) ("Clearly evidence of the appellant's failure to file tax returns [from 1987 through 1991] is probative of truthfulness or untruthfulness and therefore is admissible under Rule 608."); *Chnapkova v. Koh*, 985 F.2d 79, 82 (2d Cir.1993) ("The total failure to file tax returns for a period of eight years should be ... admissible on the issue of [plaintiff's] truthfulness ...."), *abrogated on other grounds by Jaffee v. Redmond*, 518 U.S. 1, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996); *United States v. Hatchett*, 918 F.2d 631, 641 (6th Cir.1990); *Reed v. Tokio Marine & Nichido Fire Ins. Co.*, No. 09–0676, 2010 WL 2560487, at \*2–3 (W.D. La. June 24, 2010) (unpublished opinion) ("[T]he court finds that plaintiff's failure to file tax returns from 2004 through 2008 is potentially admissible to challenge plaintiff's credibility."); *Chamblee v. Harris & Harris, Inc.*, 154 F.Supp.2d 670, 681 (S.D.N.Y.2001) ("Evidence that a witness has failed, for years, to file a tax return is a matter which affects the witness's credibility.").

¶ 26 The few state courts to have addressed the issue under evidentiary rules similar to CRE 608(b) and Fed.R.Evid. 608(b) are divided. *Compare Capul v. Fleet Bank of Maine*, 697 A.2d 66, 69–70 (Me.1997) (admissible), *and State v. Coleman*, 91–CA–34, 1992 WL 195490, \*3 (Ohio Ct.App. July 31, 1992) (unpublished opinion) (admissible), *with Lee v. Axiom Labs., Inc.*, CV980584562, 2001 WL 128917, \*4–5 (Conn.Super.Ct. Jan. 24, 2001) (unpublished opinion) (inadmissible).

¶ 27 Determining the admissibility of such evidence under CRE 608(b), however, does not end the matter. Evidence relevant under CRE 608(b) is subject to the balancing test of CRE 403. *See Segovia*, 196 P.3d at 1132; *People v. Lesslie*, 939 P.2d 443, 452 (Colo.App.1996). Thus, such evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice," confusion, or delay. CRE 403. All effective evidence is prejudicial to the adverse party in the sense that it is damaging to that party's case; *unfair* prejudice is "an undue tendency to suggest decision on an improper basis, commonly an emotional one, such as bias, sympathy, hatred, contempt, retribution or horror." *Koehn v. R.D. Werner Co.*, 809 P.2d 1045, 1048 (Colo.App.1990); *accord Vista Resorts, Inc. v. Goodyear Tire & Rubber Co.*, 117 P.3d 60, 68 (Colo.App. 2004).

¶ 28 On review, we " 'must afford the evidence the maximum probative value attributable by a reasonable fact finder and the minimum unfair prejudice to be reasonably expected' from the evidence." *Kelly v. Haralampopoulos by Haralampopoulos*, 2014 CO 46, ¶ 45, 327 P.3d 255 (quoting in part *People v. Gibbens*, 905 P.2d 604, 607 (Colo. 1995)).

### c. Application

¶ 29 Evidence indicated that Mr. Leaf's failure to file tax returns was intentional. Mr. Leaf failed to file returns for four years. And during cross-examination, Mr. Leaf admitted that he had been legally obligated to pay taxes for those years.[4] We are persuaded by the federal authority noted above holding that a failure to file tax returns for several years—as opposed to a single year—is probative of truthfulness because it reflects a pattern of behavior rather than an isolated mistake. *See Stewart ex rel. Stewart v. Rice*, 47 P.3d 316, 321 (Colo.2002) (when a state rule of evidence is similar to a federal rule, a court may look for guidance to authorities construing the federal rule); *Just In Case Bus. Lighthouse, LLC v. Murray*, 2013 COA 112, ¶ 40, —— P.3d —— (same). That authority dovetails with the supreme court's

---

4. He also said he had recently hired someone to prepare tax returns for those years.

guidance to use common experience to recognize dishonest behavior, which is probative of truthfulness. *See Segovia,* 196 P.3d at 1132. Therefore, we conclude that the district court did not abuse its discretion in ruling that Mr. Leaf's intentional failure to file income tax returns was probative of his truthfulness and, thus, admissible under CRE 608(b).[5]

¶ 30 We also conclude that the district court did not abuse its discretion in ruling that the probative value of the evidence was not outweighed by the danger of unfair prejudice. Mr. Leaf argues that the evidence had no probative value. However, his failure to file tax returns for several years was probative of his credibility, which, in turn, affected the weight of his testimony on the issues of negligence, damages, and causation. As Mr. Leaf points out in his opening brief, the "decisive issue before the jury was one of credibility."

¶ 31 Nor are we persuaded that the tax return evidence was unfairly prejudicial. Mr. Beihoffer's counsel referred to the tax return evidence in the context of discussing Mr. Leaf's credibility, saying that Mr. Leaf might be prone to lying for financial gain. That was fair comment.

¶ 32 Although the tax return evidence may have damaged Mr. Leaf's case, we do not perceive the evidence as having had an undue tendency to incite the jury to rule against him on an improper basis. *See Kelly,* ¶ 47 (district court could reasonably conclude that "intensely prejudicial" evidence was not unfairly prejudicial); *Koehn,* 809 P.2d at 1048 (reasoning that testimony submitted for a legitimate purpose cannot be characterized as unfairly prejudicial); *see also Mischalski v. Ford Motor Co.,* 935 F.Supp. 203, 208 n. 4 (E.D.N.Y.1996) (cross-examination on failure to file tax returns allowed under Fed.R.Evid. 403 where the plaintiff's testimony was very important to his case). Nor do we perceive that the danger of unfair prejudice posed by the evidence substantially outweighed its significant probative value. *See Kelly,* ¶ 48.

¶ 33 In sum, the district court did not abuse its discretion in allowing Mr. Beihoffer's counsel to question Mr. Leaf about his failure to file tax returns, or in allowing Mr. Beihoffer's counsel to refer thereto in argument to the jury.

### 2. Mr. Leaf's Other Contentions of Error Also Fail

¶ 34 Because Mr. Leaf's only contention of error relating to the element of causation is unpersuasive, his remaining contentions of error are irrelevant. *See Vanderpool,* ¶ 31; *Dunlap,* 902 P.2d at 448–49. But even assuming they are relevant, they fail as well.

#### a. Mr. Beihoffer's Guilty Plea to DUI

¶ 35 Mr. Leaf contends that the district court erred by not giving preclusive effect to Mr. Beihoffer's DUI guilty plea and by excluding evidence of the plea offered for impeachment. We reject these contentions.

¶ 36 Section 42–4–1713, C.R.S.2013, states in relevant part that "no record of the. conviction of any person for any violation of this article shall be admissible as evidence in any court in any civil action." Mr. Beihoffer's DUI offense was one arising under article 4 of title 42. Thus, evidence of Mr. Beihoffer's DUI guilty plea had no preclusive effect in this case. *See Bullock v. Wayne,* 623 F.Supp.2d 1247, 1256 (D.Colo.2009) (holding that "§ 42–4–1713 was designed to protect drivers from the preclusive effect that evidence of a traffic conviction may have in subsequent civil litigation").

¶ 37 Nor did the district court reversibly err in excluding evidence of the guilty plea for impeachment.[6] True, Mr. Beihoffer testified at trial that he was not driving under the influence of drugs at the time of the accident. But although the court did not allow evidence of his guilty plea to contradict this testimony, the court did allow evidence that (1) he smelled of marijuana; (2) he had admitted taking two Xanax tablets before driving; (3) police officers believed he

---

5. We do not suggest that evidence of a failure to file a tax return for one year is never admissible. There may be additional circumstances indicating that any such failure was an intentional act of dishonesty.

6. We assume, without deciding, that section 42–4–1713, C.R.S.2013, does not bar evidence of a conviction (by way of guilty plea or otherwise) to impeach specific testimony.

was impaired; and (4) he had admitted during his deposition that he was driving under the influence of drugs.

¶ 38 We conclude that any error in excluding evidence of the DUI conviction was harmless in this case, for two reasons. First, it was cumulative of other evidence presented, particularly the impeachment evidence from Mr. Beihoffer's deposition that contradicted his trial testimony. *See Cherry Creek Sch. Dist. No. 5 v. Voelker ex rel. Voelker,* 859 P.2d 805, 812 (Colo.1993) (exclusion of evidence was harmless where the party had already established the relevant point with other evidence); *Rojhani v. Meagher,* 22 P.3d 554, 557 (Colo.App.2000) (same); *Clark v. Buhring,* 761 P.2d 266 (Colo.App.1988) (improper exclusion of the plaintiff's felony conviction was harmless where independent evidence addressed the same underlying facts).

¶ 39 Second, whether Mr. Beihoffer had driven under the influence of drugs was not, in the end, seriously contested. Mr. Beihoffer's counsel conceded in closing argument,

He shouldn't have been in the car, there's no question about it. He shouldn't have taken Xanax and driven, even though he thought that he was just going a couple of blocks and he would be fine, and he felt fine at the time of the accident. No excuse. No excuse, but this is not a criminal trial. Three years ago is when this accident occurred. Three years ago is when these issues about Mr. Beihoffer's mistakes and taking drugs that night, Xanax that night, were dealt with in—in a different courtroom in a different setting.

Thus, the jury did not receive a misleading account of events. *See Banek,* 733 P.2d at 1176–77 (evidence of misdemeanor conviction is allowed for impeachment when testimony, left uncontradicted, gives the fact finder a false or misleading account).

¶ 40 Therefore, we conclude that exclusion of this cumulative evidence on an undisputed issue did not undermine the fairness of the trial or influence the outcome of the case. *See Bly,* 241 P.3d at 535.

b.  Jury Instruction Defining DUI

¶ 41 Mr. Leaf contends that the district court erred by rejecting his proposed jury instruction defining DUI. That instruction articulated the statutory definition of DUI. Counsel argued that the instruction was appropriate under Instruction 11:14 of the Colorado Jury Instructions for civil cases, which, though titled "DRIVING UNDER THE INFLUENCE—DEFINED," actually includes no definition. CJI–Civ. 4th 11:14. We are not persuaded that Mr. Leaf's definitional instruction was appropriate under Instruction 11:14.

¶ 42 The notes on use for this pattern instruction explain that a statutory DUI definition is to be given along with Instruction 9:14, if necessary. Instruction 9:14 expressly pertains only to a claim of negligence per se. Mr. Leaf did not pursue a negligence per se claim. He pursued only a negligence claim, and does not contend that the district court gave incomplete or improper instructions for that claim.

¶ 43 Thus, the district court did not abuse its discretion in rejecting Mr. Leaf's proposed definitional instruction; the statutory definition of DUI was not helpful in determining the claim actually presented and would have only confused the jury as to the proper standard of care. *See Bennett v. Greeley Gas Co.,* 969 P.2d 754, 763 (Colo.App. 1998) (court properly refused instruction when standard of care was already encompassed in another instruction); *Williams v. Chrysler Ins. Co.,* 928 P.2d 1375, 1377 (Colo. App.1996) ("An instruction which misleads or confuses the jury amounts to error."); *see also Hock v. N.Y. Life Ins. Co.,* 876 P.2d 1242, 1259 (Colo.1994) (reversal not warranted where instructions fairly informed the jury of the applicable law).

c.  Medical Evidence

¶ 44 Mr. Leaf contends that the district court erred by excluding medical evidence that he had disclosed after the court's cut-off date for providing discovery. He argues that the MRI evidence he wished to introduce (a somewhat novel type of MRI that purportedly captured Mr. Leaf's movements) bolstered his claim of permanent injury.

¶ 45 The accident occurred on February 26, 2010; discovery closed on September 17,

2012; and trial was scheduled to begin on November 5, 2012. At the trial management conference on November 1, 2012, the district court vacated the trial date and rescheduled it for March 18, 2013. The court specifically ruled that the case was "frozen" as of November 1, 2012, and that the resetting of the trial date "does not re-start the discovery clock." Mr. Leaf did not object, nor did he file a motion to reopen discovery.

¶ 46 However, less than one month before the reset trial date, Mr. Leaf attempted to supplement his discovery with the results of a motion MRI conducted on February 20, 2013 (three years after the accident). After considering Mr. Beihoffer's written motions, the district court excluded evidence of the motion MRI, reiterating that it had not extended the discovery deadline and had "frozen" the case on November 1, 2012.

¶ 47 Contrary to Mr. Leaf's argument, the duty of a party to supplement discovery under C.R.C.P. 26(e) does not obligate the court to rule that any new information is admissible. *See City of Aurora ex rel. Util. Enter. v. Colo. State Eng'r*, 105 P.3d 595, 610 (Colo.2005) (district court has discretion to exclude untimely disclosed evidence). A court has discretion to impose a reasonable discovery deadline in managing its docket. *Burchett v. S. Denver Windustrial Co.*, 42 P.3d 19, 21 (Colo.2002); *Silva v. Wilcox*, 223 P.3d 127, 137 (Colo.App.2009).

¶ 48 Mr. Leaf also argues that the sanction of exclusion was not justified under C.R.C.P. 37. It is not entirely clear that the court based its decision on that rule. But assuming that it did, we perceive no abuse of discretion.

¶ 49 C.R.C.P. 37(c)(1) provides that a party who fails to timely disclose evidence as required by C.R.C.P. 26(a) or (e) shall not ·be allowed to introduce that evidence at trial unless the failure to timely disclose was substantially justified or harmless to the opposing party. *See Todd v. Bear Valley Vill. Apartments*, 980 P.2d 973, 977–78 (Colo. 1999). The party making the late disclosure has the burden of establishing either substantial justification or harmlessness. *Id.* at 978.

¶ 50 The district court should consider a variety of factors in determining whether the late disclosing party has shown substantial justification or harmlessness, and it has considerable discretion with respect thereto. *Id.* Therefore, we will not reverse a district court's decision excluding evidence pursuant to C.R.C.P. 37(c)(1) unless the late disclosing party establishes an abuse of that discretion. *See Berry v. Keltner*, 208 P.3d 247, 249 (Colo. 2009); *Clements v. Davies*, 217 P.3d 912, 915 (Colo.App.2009).

¶ 51 We conclude that Mr. Leaf has failed to show that the late discovery was substantially justified or harmless. Mr. Leaf has failed to explain persuasively why the MRI could not have been conducted until three years after the accident occurred, and his explanation that the test was part of continuing treatment does not justify the delay. Nor are we persuaded that it would have been harmless to Mr. Beihoffer to allow introduction at trial of this new medical information. The MRI, which, as noted, was apparently of an unusual type, was disclosed one week before one of Mr. Leaf's medical experts was to give testimony for trial via videotaped deposition, and less than one month before trial. *See Todd*, 980 P.2d at 979 ("[T]he question is whether the failure to disclose the evidence in a timely fashion will prejudice the opposing party by denying that party an adequate opportunity to defend against the evidence.").

¶ 52 Therefore, we conclude that the district court did not abuse its discretion in excluding the untimely disclosed medical evidence and using "active trial court management of civil cases in order to reduce abuses of the system such as dilatory discovery tactics and inefficient trial preparation." *Id.*; *see Trattler v. Citron*, 182 P.3d 674, 680 (Colo.2008).

### III. Conclusion

¶ 53 For the foregoing reasons, the judgment is affirmed.

JUDGE HAWTHORNE and JUDGE ASHBY concur.