24CA0957 Page v Dorsey 11-06-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA0957
El Paso County District Court No. 20CV31332
Honorable Eric Bentley, Judge

---

Rebecca Page,

Plaintiff-Appellant,

v.

Ingeborg Dorsey,

Defendant-Appellee.

---

JUDGMENT AFFIRMED

Division IV
Opinion by JUDGE JOHNSON
Harris and Schock, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced November 6, 2025

---

Faegre Drinker Biddle & Reath LLP, Laurence W. DeMuth, III, Megan M. Farooqui, Boulder, Colorado; Faegre Drinker Biddle & Reath LLP, Teresa Akkara, Anya L. Gersoff, Denver, Colorado, for Plaintiff-Appellant

Spies, Powers & Robinson, P.C., Brendan O. Powers, Denver, Colorado, for Defendant-Appellee

¶ 1     Plaintiff, Rebecca Page (Page), appeals the district court's orders denying her requests for (1) appointment of pro bono counsel and (2) an extension of discovery deadlines. Because we reject Page's contentions and uphold the district court's orders, we affirm the judgment.

## I. Background

¶ 2     In August 2019, Page and defendant, Ingeborg Dorsey (Dorsey),[1] were involved in a car accident when Dorsey's vehicle collided with Page's vehicle. In July 2020, Page filed this lawsuit asserting Dorsey was negligent and drove carelessly. Page alleged numerous injuries as a result of the accident. Dorsey admitted liability but denied that the accident caused Page's injuries. At the

---

[1] On June 26, 2024, defense counsel filed a notice of suggestion of death regarding Dorsey, noting that Dorsey's death certificate was attached as an exhibit, but it was not. The parties continued to litigate post-trial proceedings in the district court without defense counsel seeking to substitute the decedent's estate as a party. In this court, defense counsel filed another notice of suggestion of death, noting Dorsey died on May 18, 2024. This court issued a one-judge order noting that, under C.A.R. 43(a)(1) and (3), Page "may proceed in this matter as though the death had not occurred, and if a personal representative [PR], once appointed, desires to be substituted as a party for appellee, that PR may file an appropriate motion to substitute under the rule." As of the issuance of this opinion, defense counsel has not filed any notice substituting the decedent's estate as the defendant.

outset of this case, Page was represented by counsel, but her counsel eventually withdrew in August 2021. Page subsequently proceeded pro se.

¶ 3 The parties' litigation spanned four years, with three presiding judges, five trial dates, and numerous discovery and disclosure disputes. As to discovery, Page insisted that she had difficulty meeting her pretrial obligations because she did not have an attorney; she frequently indicated that she was working on hiring a new attorney but faced challenges in doing so because her former attorney had filed a lien against her. Page also asserted that she faced difficulties because of her health and alleged injuries, including a traumatic brain injury. The court expressed concerns and encouraged Page to obtain an attorney to assist her.

¶ 4 In September 2023, a few weeks before the fourth trial setting, the court continued the trial due to docket issues. Page requested that the court extend the discovery deadlines and Dorsey objected. The court denied the motion, reasoning that it had continued the trial sua sponte, not because of discovery issues. Page asserts that it was at this hearing she orally requested that the court help her find an attorney.

¶ 5     In March 2024, eleven days before the rescheduled trial, Page filed a motion for appointment of pro bono counsel (the pro bono motion) pursuant to the Fourth Judicial District's Civil Pro Bono Project (the Pro Bono Project).  Dorsey objected and the court denied Page's request as untimely.

¶ 6     Following a jury trial, the jury awarded Page $5,000.  The court issued a final judgment, awarding Page pre- and post-judgment interest, for a total judgment of $12,312.98.[2]

¶ 7     Page contends that the court erred by (1) denying her request for pro bono counsel and (2) denying her request to extend the discovery deadlines.

## II.     Appointment of Pro Bono Counsel

¶ 8     Page contends that the district court erred by denying her request for pro bono counsel as untimely and failing to evaluate the appropriate factors under the Pro Bono Project's rules.

---

[2] We take no position on Page's collection efforts to satisfy her judgment against Dorsey, as Dorsey's estate has not been substituted as a party to this action.

A.     Standard of Review and Applicable Law

¶ 9     We must first determine the appropriate standard of review when a court declines to conditionally appoint counsel under the Pro Bono Project.

¶ 10     Generally, a party does not have a constitutional or statutory right to counsel in a civil case. *Wycoff v. Grace Cmty. Church of Assemblies of God*, 251 P.3d 1260, 1269 (Colo. App. 2010); *People v. Cobb*, 944 P.2d 574, 576 (Colo. App. 1996) (concluding that there was no right to counsel "[b]ased upon the civil nature of this . . . proceeding"). There are instances, however, where the General Assembly has provided a party with a statutory right to counsel. *See, e.g.*, *People in Interest of Uwayezuk*, 2023 COA 69, ¶ 16 (noting that respondents subject to involuntary medication proceedings are entitled to counsel by statute).

¶ 11     The Fourth Judicial District has implemented the Pro Bono Project to help eligible parties in civil cases obtain pro bono representation. Fourth Jud. Dist., *Civil Pro Bono Project*, § (1)(a), (effective Jan. 1, 2018), https://perma.cc/2MXW-ACPP (the Project Rules).

4

¶ 12     Only eligible unrepresented parties may be appointed pro bono counsel. *Id.* § (1)(e)(1). An unrepresented party is considered eligible for pro bono counsel when she has "been granted leave to proceed in forma pauperis" or after she has demonstrated "limited financial means." *Id.* § (1)(e)(1)(A)-(B). "A judicial officer to whom a civil matter is assigned may on motion by an eligible, unrepresented party, or on his or her own initiative, enter an Appointment Order" that authorizes "the conditional appointment of a Panel member to represent the party and directing the Administrator to select the next available Panel member with relevant subject matter preference or expertise." *Id.* § (1)(f)(1)(A).

¶ 13     In *Pruitt v. Hess*, 923 P.2d 325, 328 (Colo. App. 1996), a division of this court analyzed whether a district court erred by not appointing a prisoner counsel in a federal civil rights proceeding. The prisoner pointed to 28 U.S.C. § 1915(d) (1988) (current version at 28 U.S.C. § 1915(e)(1)), which stated that "[t]he court may request an attorney to represent any such person unable to employ counsel." *Id.* The division relied on *Harbolt v. Alldredge*, 464 F.2d 1243 (10th Cir. 1972) — a case also involving a party relying on 28 U.S.C. § 1915(d) to obtain appointment of counsel in a civil case —

5

determining that any court decision to appoint counsel under that statute would be discretionary. *Pruitt,* 923 P.2d at 328.

¶ 14 Given the permissive language in the Project Rules and how it is similar to the statute at issue in *Pruitt,* we review the district court's denial of Page's motion for an abuse of discretion. *Id.* A court abuses its discretion when its ruling is "manifestly arbitrary, unreasonable, or unfair" or when it misapplies the law. *Jordan v. Terumo BCT, Inc.,* 2024 CO 38, ¶ 26.

¶ 15 To the extent Page's contention claims the court relied on erroneous facts, we review a court's factual findings for clear error. *Gagne v. Gagne,* 2019 COA 42, ¶ 17. We will only reverse a court's factual findings if there is no evidentiary support for them in the record. *Id.*

### B. Analysis

¶ 16 We conclude that the court did not err by denying Page's motion.

¶ 17 Under the Project Rules, if an eligible unrepresented party files a motion for appointment of counsel, a "judicial officer should consider all relevant circumstances." Project Rules § (1)(f)(1)(B). The Project Rules also list four factors that should be included in

the court's analysis: (1) "the nature and complexity of the action;" (2) the merit of the unrepresented party's claims or defenses; (3) "the demonstrated inability of the unrepresented party to retain an attorney by other means;" and (4) "the degree to which the interests of justice, including the benefits to the court, will be served by appointment of counsel." *Id.* § (1)(f)(1)(B).

¶ 18    At a pretrial hearing for the fifth trial setting on March 22, 2024, the court addressed Page's request for pro bono counsel. The court reasoned that of the four factors, the "most important one here is the interest of justice." It pointed to the case's history having five trial dates and three presiding judges and to Page's attempt to obtain replacement counsel being "at the forefront of the case for the last two-and-a-half years." It also noted the Pro Bono Project was a "scarce resource," indicating that demand is higher than the supply of attorneys. The court reasoned that, "even if it was possible to get a counsel to accept appointment within" the next ten days before trial, pro bono counsel would seek a continuance and need "a substantial period of time to get up to speed." And given how old the case was and that Page made the request days before the fifth trial setting, it said, "The Defendant

has a right to — to know that, at some point, a trial date means something, and that the case will eventually go to trial." As a result, the court denied Page's request as untimely.

¶ 19    Page raises three contentions arguing that the court abused its discretion: (1) her request was timely; (2) the court failed to provide her notice of the Pro Bono Project; and (3) the court failed to weigh the Project Rules appropriately. We reject her contentions.

### 1.    Timeliness of the Request

¶ 20    Page contends the court erred because its ruling is based on the mistaken premise that her March 2024 written motion was the first time she sought appointment of counsel. She points to a September 24, 2023 hearing in which she told the court she had "no ability to hire an attorney" and she "desperately" needs an attorney.

¶ 21    But Page's request at this hearing appeared to focus on her desire to remove the $20,000 attorney lien her former counsel had filed after that counsel had withdrawn in August 2021. When the court asked Page what she wanted the court to do, she responded, "Your Honor, I, I need an attorney desperately." She indicated that

8

she would "like information on how to get the lien removed so that I can get an attorney on this. That's my main goal . . . ."

¶ 22　　We do not interpret Page's words as a request for the appointment of pro bono counsel. Our interpretation of her statement as one in which she wanted help to remove the lien to boost her search for new counsel is supported by a short colloquy at the end of the same hearing: In response to Page indicating that she wanted to freeze Dorsey's assets, the court stated that if Page would like to make such a request with legal authority, she should file a motion, to which Page responded, "As soon as I can get an attorney, I'd love to do that."

¶ 23　　The record reflects that Page repeatedly represented to the court before this hearing that she was attempting to hire new counsel. Even after the September 2023 hearing, she told the court in February 2024, "I've been trying to hire [an attorney] . . . ." Therefore, we do not view Page's statement from the September 2023 hearing to be a formal or informal request for the appointment of pro bono counsel under the Pro Bono Project.

¶ 24　　Page also argues that the court should have known she needed counsel because she told the court many times before

March 2024 about her inability to read and that her traumatic brain injury made it difficult for her to represent herself. But we do not fault the district court for relying on Page's assertions that she was attempting to secure counsel, rather than assuming that she wanted appointment of pro bono counsel.

¶ 25 Therefore, based on this record, the court's factual finding that Page's request was untimely does not constitute clear error. *Gagne*, ¶ 17.

### 2. Duty to Inform Page of the Pro Bono Project

¶ 26 Next, we conclude that the district court had no duty to inform Page of the Pro Bono Project. Although the Project Rules note that a court "may" sua sponte appoint counsel, this is not equivalent to the rule mandating a court to inform a party of a right to counsel. *See Cagle v. Mathers Fam. Tr.*, 2013 CO 7, ¶ 31 (in legislation, we generally view the word "may" to mean permissive or discretionary).

¶ 27 Page's reliance on cases holding that a district court errs when it fails to inform a party that she might be entitled to counsel is misplaced. All of those cases dealt with a statutory right to counsel, a right that Page concedes the Pro Bono Project does not confer. *See In re R.A.M.*, 2014 COA 68, ¶ 29 (holding that "[t]he

10

court must advise parents of their right to counsel, both at their first appearance and when a termination motion" regarding parental rights is filed); *In re Adoption of J.D.F.*, 761 N.W.2d 582, 587–88 (N.D. 2009) (holding that "a district court must advise parents that they are entitled to representation by counsel" in proceedings regarding termination of parental rights). Therefore, the court did not err by failing to inform Page of the Pro Bono Project.

### 3. Project Rules

¶ 28 Finally, for three reasons, we discern no error in how the court weighed the Project Rules factors.

¶ 29 First, we reject Page's contention that the court had to consider all four factors. The Project Rules indicate the court "should consider all relevant circumstances," and then they provide four nonexhaustive factors. Project Rules § (1)(f)(1)(B). Looking at the Project Rules as a whole, some of the rules say "should" (like the four factors), while others use the word "shall." As a result, we interpret the Project Rules' use of the word "should" to reflect a recommendation, not a mandate, that the court analyze all four factors. *Compare id.* § (1)(f)(1)(B) ("the judicial officer should

11

consider"), *with id.* § (1)(d)(2) ("application shall include the following"), *and id.* § (1)(f)(2)(B)-(E) ("the Administrator shall"), *and id.* § (1)(g)(2) ("the attorney shall file"), *and id.* § (1)(g)(5) ("[a]n attorney appointed under this rule shall"). Thus, the court was not required to consider *all* the Project Rules' factors.

¶ 30    Second, the record supports that the court considered all relevant circumstances, which it reasoned turned on the untimely nature of Page's request. As already discussed above, Page's request was made eleven days before the fifth trial setting. The trial record supports that Dorsey was ninety-three years old, she lived in a nursing home with dementia, and her health was ailing, so much so that she died about a month and a half after trial. Therefore, we cannot say the court's concern for Dorsey obtaining a definitive trial date as grounds to support its denial of the motion constituted an abuse of discretion. *See Todd v. Bear Valley Vill. Apartments*, 980 P.2d 973, 976 (Colo. 1999) ("We note that credible trial dates are a vital component of our civil justice system. . . . Delay resulting from continuances creates a host of problems for the parties and for the justice system as a whole.").

¶ 31    Finally, the court made implied findings about the potential merit of Page's claims. In looking at Page's indigent status, the court noted that most personal injury cases are handled on a contingency fee basis due to a plaintiff's lack of financial resources to obtain counsel. Because of this arrangement, the court said, "the free market and the personal injury counsel get a chance to evaluate it and take the case, if they think it's worth the cost." The court concluded, "[I]t would be an unusual [personal injury] case" in which it would grant a motion to appoint counsel.

¶ 32    In other words, given that Page had failed to secure counsel in two and a half years, the court impliedly found that her claims were not as meritorious as she believed them to be. *See Foster v. Phillips*, 6 P.3d 791, 796 (Colo. App. 1999) (recognizing that findings may be implied in a district court's ruling so long as the ruling "is sufficient to determine its basis"). And Page's belief that the attorney lien prevented her from obtaining counsel was not necessarily a barrier; if new counsel believed Page's injuries and success at trial would likely result in a substantial monetary judgment, a $20,000 lien was not an insurmountable obstacle.

¶ 33    Therefore, we conclude the court did not abuse its discretion by denying Page's motion for pro bono counsel.

## III.    Discovery Deadlines

¶ 34    Page contends that the court erred by denying her request to extend the discovery deadlines. We disagree.

### A.    Standard of Review

¶ 35    We review a court's decision whether to extend discovery deadlines for an abuse of discretion. *In re People in Interest of J.P.*, 2023 CO 57, ¶ 17. As noted above, a court abuses its discretion when it misapplies the law or when its ruling is "manifestly arbitrary, unreasonable, or unfair." *Jordan*, ¶ 26 (citation omitted).

### B.    Analysis

¶ 36    The record supports the district court's decision to deny Page's request to extend discovery deadlines for two reasons.

¶ 37    First, the court is under no obligation to extend discovery deadlines when trial is continued for reasons unrelated to discovery. *Todd*, 980 P.2d at 977. While courts must afford parties the opportunity to have their "day in court" and to present evidence, "the trial court must be careful not to reward a party who fails to make timely disclosures by granting a continuance, since this

14

practice invites abuse." *Id.* at 979. Where a discovery deadline has passed and a party fails to timely disclose evidence, the party will not be allowed "to introduce that evidence at trial unless the failure to timely disclose was substantially justified or harmless to the opposing party." *Leaf v. Beihoffer*, 2014 COA 117, ¶ 49. If a party makes a late disclosure, they have the burden of proving "either substantial justification or harmlessness." *Id.*

¶ 38　　Discovery closed in December 2022, and trial had at one point been scheduled in September 2023. Page had over eight months to request an extension of discovery during this time, but she did not do so until the court sua sponte continued the September 2023 trial. The parties conducted discovery for over two years. Therefore, based on this record, we discern no error when the court indicated that "under all the circumstances . . . it [was] not appropriate to reopen [discovery]" when it continued the trial.

¶ 39　　Second, the court provided Page with considerable latitude to comply with discovery and disclosure deadlines, even after missing them, and she received assistance from defense counsel. For example, the court directed defense counsel to email Page copies of court filings to ensure that she was aware of important deadlines.

And defense counsel on their own paid for the costs to obtain some of Page's medical records and then shared copies of those records with her.

¶ 40    Page missed the deadlines to submit her witness list, exhibit list, and disclosure of damages, but still sent to defense counsel a list of twelve witnesses — most of whom had not been previously disclosed — well after the deadline.  Even so, the court gave Page the opportunity to explain why it should allow her to present late disclosed witnesses at trial by filing a response to Dorsey's objections.  But Page did not file a response or provide an explanation for her late disclosures.

¶ 41    Despite all this, the court ruled that she had the opportunity to present three medical providers and a lay witness at trial, though she ended up calling only the lay witness.  The court also allowed Page to "present evidence of damages suffered . . . to the extent the medical records have been disclosed" even though Page had not submitted an updated formal disclosure of damages.  Despite this, as defense counsel points out, Page had not provided any other itemization of damages beyond $23,674.66 in past medical expenses.  Finally, the court had an Americans with Disabilities Act

Advocate assist Page at trial and allowed her to leave the courtroom to obtain additional evidence from her car for rebuttal.

¶ 42    Despite the court's leeway, Page fails on appeal to explain how the court's refusal to extend discovery prejudiced her. For example, she fails to identify any witnesses or documents she disclosed during the extended discovery period that would have supported her theory of damages or changed the jury's award.

¶ 43    As a result, we conclude the district court did not err by denying Page's request to extend discovery deadlines.

## IV.    Conclusion

¶ 44    We affirm the judgment.

JUDGE HARRIS and JUDGE SCHOCK concur.

17